Bell, J.
It appears from the record that more than a half-century ago the Mining Ditch was constructed from a head-gate on Clear Creek, a natural stream, to the premises now owned by Thomas B. Stuart, plaintiff and plaintiff in error, in Jefferson County, Colorado, with a carrying capacity of 3% cubic feet of water per second of time, and that the owners of said ditch carried water there-through and put it to a beneficial use on said premises in washing a number of acres of gravel for placer gold. In 1883, The Wadsworth Ditch Company was incorporated as a mutual water company, for mining and irrigation purposes, with 96 shares of stock, taking over -and absorbing said Mining Ditch, or the greater part thereof, as the Wadsworth Ditch. The first appropriation of 3cubic feet from Clear Creek was adjudicated to the Wadsworth Ditch, as Priority No. 1 from Clear Creek, based upon said beneficial use, and the second appropriation of 9% cubic feet per second of time was decreed to said Wadsworth Ditch, as Priority No. 48. The ditch runs through the town of Arvada, in said coun *571 ty, from the western to the eastern boundary, and a number of the stockholders and officers of the company reside and own property in said town, and, at the time complained of, were officers also thereof, and watered their town premises, moré or less, from the waters of said ditch. In 1899 and for a long period of time subsequent thereto, one Lloyd J. Caldwell owned the entire premises now possessed by Stuart, and the defendants Davis, Nelson and the Hamiltons, all of which were watered through said Wadsworth Ditch, and all of which are situated east of Craves Avenue, except the premises now owned by Davis, which are situated immediately west of said avenue, and the premises owned by Stuart. Said Craves Avenue seems to be a common thoroughfare passing through said town and county, and maintained jointly by them. Plaintiff, and the' defendants Nelson, and the Hamiltons, are and were, the only users of water' from the ditch east of Davis’ premises, and received the same from the main ditch at three points on the eastern boundary of said premises, and conducted it across said avenue in three gravity flumes. The tail waters of the ditch were conducted across said avenue in one of those flumes, and partly supplied to Nelson, and partly wasted over the premises of Stuart into Ealston Creek, a tributary of Clear Creek. Stuart also received water from another point in said main ditch, and conducted it in a syphon, under said avenue, in sufficient quantities only to irrigate about 83/100 of an acre of lawn and shrubbery about his buildings. This syphon was originally built by Caldwell, when he owned said premises, under the direction of the officers of said town, and with material furnished him therefor, as a substitute for a small wooden flume which he had placed under said avenue for the purpose of carrying water to his premises to be used in mixing mortar for building purposes. During all the times herein mentioned prior to the changes com *572 plained of, the whole of said Wadsworth Ditch was an. open gravity ditch running upon a regular grade, and said ditch company owned an unquestioned easement necessary for the convenient use and maintenance thereof. It ran along the entire southern boundary line, and more than half along the eastern boundary line of the premises now owned by Davis, and was in use and operation at the time of his purchase of said premises. In the year 1909, the defendants Davis, Nelson, Hamiltons, and The Wadsworth Ditch Company agreed among themselves to, and did, divert the waters of the ditch belonging to said Nelson and the Hamiltons at a point near the western boundary of the premises of Davis, and made a spillway at said point of diversion for the wasting of any surplus water that might come down said Wadsworth Ditch, so that no one would be required to use any part of the ditch east of the western boundary of'the Davis land, except Stuart; and, under this agreement, Davis, with the consent of the defendants just named, and over the protests of Stuart, destroyed the open ditch across his premises, including the head-gates of the plaintiff, and the tail-gate of the ditch company, and substituted therefor a line of 12-inch earthen pipe buried along his southern line. At the same time that those changes were made, the town of Arvada and the county of Jefferson lowered Graves Avenue between the premises of Davis and Stuart from 3 to 5 feet, and thereby destroyed the connections to several of the ditches on Stuart’s land, made difficult the entrances to his driveways, damaged the general condition and appearance of his premises along said avenue, and substituted a 12-inch syphon for the flumes and syphon that theretofore conducted his water from the main ditch on Davis’ premises. Plaintiff made a good-faith effort to use the changed conditions forced upon him against his protests, but said pipe line at times became clogged with *573 mud, and, when there was not a full flow at the end of the ditch, there was not sufficient pressure to force the water through the pipe onto his premises, ánd two larg’e reservoirs, which he owned near his buildings for the use of his fowl and domestic animals, and a complete system of irrigation ditchés throughout his premises went dry, and were rendered useless; and the witnesses testified that, if those changed conditions were allowed to continue, the property, which is said to be worth from ten to forty thousand dollars, would be damaged to the extent of one-half of its value. Soon after Davis purchased his premises, he notified Stuart and the secretary of the ditch company that he had taken counsel and was advised that he had a right to destroy the open ditch upon his premises and substitute a buried pipe therefor, and announced his intention of acting under this advice; and it was also made known about the same time that the change in Graves Avenue was contemplated by the town and county authorities. The plaintiff, the secretary of the ditch company, and the husband of defendant Nelson, protested against the intended changes, and, after conferring with the secretary of the ditch company, plaintiff agreed to withdraw his protests if Davis would agree in writing to make such changes only as would not interfere in any manner with the supply and distribution of the water theretofore enjoyed by plaintiff, Nelson, and the Hamiltons, and further agree to maintain such changed conditions in like manner, and be responsible for all damages occasioned by his failure so to do. Stuart prepared a proposed agreement to this effect and submitted it to the secretary of the ditch company' for the signature of Davis, who refused to sign it, .and the changes as herein recited were proceeded with and made over Stuart’s vigorous and renewed protests, in violation of his vested rights and interests and to the great damage and destruction of his property. The evidence as *574 far as introduced indicates that the ditch company, Davis and the officers in charge for the town of Arvada, and the county of Jefferson were co-operating to destroy the open ditch on the premises of Davis and reduce the grade of Graves Avenue. It has not been shown that those changes would benefit either the ditch company or the plaintiff, but it is contended by the company that the change in the highway was a necessary improvement; that the substituted pipe and syphon is a change which benefits Stuart; that he accepted and approved of the same, and is, therefore, estopped from complaining against it; and it is urged by the defendants that he constructed a cement ditch on his premises in his preparation to meet the changes. The evidence, however, utterly contradicts all statements in the pleadings or elsewhere to the effect that he consented or intended to consent to any of the changes, other than as set forth in the agreement proposed and submitted for the signature of Davis. lie admits that he built the cement ditch at a cost of about $25.00, and shows throughout his evidence that, while those changes were being imposed upon him against his written protests,' he did everything within reason to accept the changes if they would not considerably interfere with the rights and benefits theretofore enjoyed by him. In the agreement proposed by him he reserved the right to have the old conditions restored if the changes should prove to be inefficient, or if Davis should fail in his duties to maintain them, and at all times he insisted that the changes, if any, should be such as not to interfere with the supply and distribution of water enjoyed by him, Nelson and the Hamiltons, including all waste water, previous to any such changes. Notwithstanding his protests and demands, the evidence shows the continued inefficiency of the new methods to carry even two shares of water that belonged to him individually, and he testified that the spill water was changed *575 to a point from 3 to 5 feet below Ms property, so that it is impossible to receive any thereon. The terms insisted upon by him in his proposed agreement were most reasonable and usual under the conditions that existed, and his attitude throughout, as evidenced by the proposed agreement, and his many letters to the parties concerned, shows a generous public spirit, and a generous desire to accommodate his neighbor, and the public, by accepting a sufficient substitute for the open ditch, with proper guarantees that snch substitute would be installed and maintained by and at the cost of the parties benefiting thereby. He asked no more than he was entitled to and could have recovered had the changes been made under the right of eminent domain and the proceedings thereunder, and it was confiscatory of his vested rights to destroy the open ditch in the manner resorted to against his protests. It cannot be said that the defendants could impose upon him the underground pipe and syphon, unless they assumed the responsibility for its proper installation and continued maintenance, so as not to interfere with his vested rights. Both our state constitution and statutes protect the individual in his vested rights and prohibit the taking thereof for. public or private use without condemnation under proper proceedings and just compensation given therefor. — ■ Const., Art. II, Secs. 14, 15; Mills Revised Statutes 1912, Yol. 1, Sec. 2616.
It might be a commendable act, if the ditch company were able, for it to make a gift of its easements in Graves Avenue to the town of Arvada and the county of Jefferson, but it is difficult to see why it should surrender a valuable open ditch to Davis, a private citizen, without compensation and accept a substituted buried pipe therefor, with the burden of maintaining the same and replacing it whenever necessary. If those gifts affected every stockholder to the same extent, then, by *576 unanimous consent of all the stockholders, such a gift might be made even to the private citizen Davis, but the same would be very unusual; and, if but one stockholder should object to the making of such a gift, we know of no authority by which the trustee company could persist therein and thus dispose of the property or interest of its cestui que trust without his consent. However, in the light of the evidence in this case, those changes do not injuriously affect any of the stockholders, except the plaintiff, and his vested rights seem to have been inequitably and needlessly sacrificed. The stockholders are the real parties in interest in the affairs and property of the corporation, and the corporation, by operation of law, is under contract with each of its stockholders to hold and manage the property and affairs of the cor■poration for the objects and purposes for which it was created, and for no other purpose; and every stockholder has the fight to insist that this contract shall be complied with. — 2 Clark & Marshall, Private Corporations, sec. 539; Rocky Ford, etc., Co. v. Simpson, 5 Colo. App., 31-35. It is not necessary to the enforcement of this right that the officers of the corporation intentionally commit a wrong or an actual fraud, for, if it is ■ shown that the officers are diverting the assets or countenancing any unauthorized surrender of the rights of the corporation, any stockholder has the right to complain and be relieved in equity. — 2 Clark & Marshall, supra, sec. 539.
If the officers of The Wadsworth Ditch Company, or a majority of its stockholders, may, without compensation, permit Davis to destroy that part of the open ditch' on his premises and substitute the same with an underground pipe line, which from its very nature is more expensive to maintain than the open ditch, without the beneficiary of the change assuming all obligations of substitution, maintenance and replacement, then we see no reason why such officers or majority stockholders might *577 not place a like burden on all minority stockholders without their consent.
There is no claim made in the answers filed by the defendants, or otherwise, that the substitution of the pipe line, the lowering of the grade of the road, and the cessation of returning the tail and waste waters to the natural stream from which they were taken through the premises of the plaintiff, as had been done for nearly a half-century, were for the benefit of the- ditch company or any stockholder thereof, except Davis, who had neither a legal nor equitable right to such a recognition if the changes or any of them injuriously affected the vested rights of the company or any of its other stockholders.
The evidence clearly shows that the Mining Ditch had been built across Graves Avenue to and upon the land now owned by Stuart and its waters carried there-through and applied to a beneficial use in washing a number of acres of gravel on the premises for placer gold, long before said avenue was established, and that, by reason of -said application of the “waters to such a beneficial use, The Wadsworth Ditch Company obtained a decree for 3y2 cubic feet of water per second, as Priority No. 1 from Clear Creek. Defendants claim in their answers that the Wadsworth Ditch terminates at the east boundary line of the Davis tract, and does not even réach the premises of Stuart. We are unable to see how The Wadsworth Ditch Company could legally secure á decree for said priority based upon said application of water on the Stuart premises, unless the company owned the ditch leading to the point of use, and we know of no authority of the officers or a majority of the stockholders to abandon that part of the ditch that carried said 3y2 cubic feet of water per second across the plaintiff’s premises to the place of use without his consent. — Candelaria et al. v. Vallejos et al., 13 N. M., 146, 81 Pac., 589; The Cache La Poudre Irrigating Co. v. The Larimer & Weld Reservoir Co., 25 Colo., 144, 53 Pac., 318, 71 Am. St., 123.
*578 It does not seem consistent with the good faith required of a trustee, for the ditch company to destroy or permit to he destroyed the flumes that formerly conducted the waters of its ditch across Graves Avenue, including the tail or waste waters, which seem to have been wasted over the plaintiff’s land, or used by him, Nelson and the Hamiltons, and their predecessors in interest ever since the Mining Ditch was constructed. While it may be true that the ditch company is not required to run any waste water, or water in excess of its claimed appropriation, nevertheless, if there is in said ditch at any time any surplus water, any stockholder who may need the same has an equitable right to the use thereof, even though it may exceed his technical allowance measured by his shares of stock; and, if the ditch company, in its endeavor to so shape things as to bring about this changed condition, did make a spillway west of the premises of the plaintiff, and wasted great quantities of water that ran upon neighboring lands, and made a marsh thereof, as testified to by him, when he desired to and could have made beneficial use thereof but for said changes, he certainly had a right to complain. It is common knowledge that those generally using water at the tail end of a ditch usually have the poorest service when the best of faith is exercised, and it is quite usual to take special pains to give them excess water at such times when the same may be in the ditch, to make up for their losses by reason of being subjected to the mercy of all those above them, as it were. If the evidence of the plaintiff truly shows the conditions as they now exist, every water user above him may participate in the waste or excess waters of the ditch, and, before the same reaches his premises, it may be turned out upon the open country through a spill-gate made for that purpose, while, under the old conditions, such waters could have been delivered to his *579 lands, and used by him or returned to the natural stream from which they were taken, as provided by statute.
The trial court held that it could not render judgment against the ditch company and the county together. It might have rendered separate judgments against each'. However, the question thus passed upon by the trial court was not raised by either demurrer or answer. Section 50, Mills’ Annotated Code, provides that the defendant -may demur for the reason that there is a defect or misjoinder of parties plaintiff or defendant, or that several causes of action have been improperly united, or for divers other reasons. Section 51 provides that the demurrer shall state the specific grounds therefor; and section 52 requires the demurrer to be disposed of before any other pleading in the same cause of action shall be filed, or it will be deemed to have been waived. In this case, all of the defendants introduced their answers with a general demurrer to the effect that the petition does iiot state facts sufficient to. constitute a cause of actioh, and is ambiguous, uncertain and unintelligible. They then continued, without even paragraphing, except in that of the Hamiltons, with general and special answers, with no apparent intention of immediate hearing on the demurrers. Under the practice in this jurisdiction, such combined demurrers and answers are not. authorized by the Code, and such preliminary demurrer by the very words of the Code is waived by the answer, and is such a blemish on the pleading that it should be stricken upon suggestion. A demurrer because the complaint does not state facts sufficient to ’constitute a cause of aption or for want of jurisdiction may be raised at any time, probably ore tenus, and it simply burdens the record by making it precede the answer in the same pleading, and should be discouraged. Defect or misjoinder of parties is waived by pleading and going to trial without objection. — Miller, etc., v. Blake, 6 Colo., 118-119.
*580 A defect of parties or misjoinder of causes of action is waived if not raised by demurrer or answer. — Fitzgerald v. Burke, 14 Colo., 559, 562, 23 Pac., 993; Great W. M. Co. v. Woodmas of A. M. Co., 12 Colo., 46, 20 Pac., 771, 13 Am. St. Rep., 204; Brahoney v. Denver, etc., Co., 14 Colo., 27, 29, 23 Pac., 172; Melsheimer et al. v. Hommel, 15 Colo., 475, 477, 24 Pac., 1079; Keys v. Morrison et al., 3 Colo. App., 441, 443, 34 Pac., 259.
Under the pleadings in this case, the waivers above mentioned and the evidence taken, we feel that we are authorized to and should declare the, rights of the parties, as none of them have disclaimed interest or attempted to avoid a trial upon the issues made, but, instead, all have encouraged the trial by actively joining therein without objection.
We find under the complaint and evidence introduced that the plaintiff had a vested right in the maintenance of the Wadsworth Ditch across the premises of the defendant Davis, 'and to maintain his headgates or delivery boxes so as to irrigate his lands substantially as irrigated by him prior to the destruction thereof by said A. L. Davis, and that said Davis had neither a legal nor an equitable right, as against the plaintiff, to destroy said headgates or said ditch, or to substitute a buried pipe therefor, without providing for plaintiff other adequate and satisfactory means for receiving his water from said carrier so that his lands could be advantageously irrigated as prior to said change, or complying with the terms as contained in the proposed agreement .submitted by the plaintiff, or without his consent or acquiescence after having full knowledge of the facts.— Gregory v. Nelson, 41 Cal., 278; Johnston v. Hyde, 32 N. J. Eq., 455; Dickenson v. Canal Co., 15 Bev., 260; Allen v. San Jose Water Co., 92 Cal., 138, 28 Pac., 215, 15 L. R. A., 93.
Neither had The Wadsworth Ditch Company a right *581 to destroy or permit to be destroyed such open ditch or to permit a substitution of pipes therefor over the protests of the plaintiff until adequate provision was made substantially as required in the proposed agreement submitted by him to the secretary of the ditch company with the request that he have the same properly executed by said A. L. Davis before the destruction of the said open ditch or before any material change was made in the then existing conditions. The answer filed by The Wadsworth Ditch Company is wholly insufficient to justify it in permitting or acquiescing in the burdens that the evidence introduced shows were placed upon the plaintiff by the changes made.
We further find that The Wadsworth Ditch Company is bounden by its trust to deliver to the plaintiff his full proportion of water with practically as little expense and inconvenience to him as would have been necessary if the changes complained of had not been made, and that no enhanced cost of delivery nor any increased burdens of cleaning, maintaining or replacing any substitute that may or might have been made for the open ditch, can legally be placed upon him without his consent; that the county of.Jefferson or the town of Arvada has no right, legally or equitably, to disturb or destroy any vested rights the plaintiff may have enjoyed for his flumes or means of conducting his waters across Graves Avenue, without his consent or without proper condemnation and just compensation; nor had The Wadsworth Ditch Company any right or authority to consent to or permit a disturbance of the plaintiff’s easements or flumes in or across said Graves Avenue.
The trial court erred in dismissing the action against the defendants A. L. Davis, The Wadsworth Ditch Company, and The Board of County Commissioners of the County of Jefferson. There seems to be no cause of action against the other defendants named in the com *582 plaint, viz.: J. C. Nolan, J. F. White, Pearl Nelson, Y. H. Plamilton and W. B. Hamilton. The defendant J. C. Nolan seems to have acted aá a representative of the town of Arvada, and it would seem that said town rather than he should have been made a party defendant.
The judgment of the trial court in dismissing the action as against said defendants A. L. Davis, The Wads-worth Ditch Company and The Board of County Commissioners of the County of Jefferson is reversed, set aside and held for naught, and the case is hereby remanded with directions to the trial court to exercise a liberal discretion in permitting the pleadings to be amended, if desired, bringing in the town of Arvada as a party defendant, and securing a full trial on the merits, permitting the use of the evidence taken in the former hearing; and it is hereby ordered that the costs legally assessable on this appeal be taxed against said defendants A. L. Davis, The Wadsworth Ditch Company and The Board of County Commissioners of the County of Jefferson, except such costs as may have been added by reason of those defendants against whom the dismissal is sustained being made parties.

Reversed.