No. 19,139.

VALLEY DEVELOPMENT CO., ET AL. *v.* ROSE L. WEEKS.
(364 P. [2d] 730)

Decided September 5, 1961.

Mr. Clarence L. Bartholic, Mr. Robert L. Bartholic, for plaintiffs in error.

Messrs. Dawson, Nagel, Sherman & Howard, Mr. Raymond J. Turner, for defendant in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

We will refer to Weeks, plaintiff below and defendant in error here, as "Weeks"; and to plaintiffs in error Valley Development Company, et al., as "Valley" or defendants, unless necessary to refer to them by name.

Weeks sought an injunction and damages against Valley, its officers and numerous other defendants. She alleged that she was the owner of certain farm lands (located north of Centennial Race Track in Arapahoe

County, Colorado) and further that she was the owner of a certain water right as well as a ditch right in the Brown Ditch, which supplies her lands with irrigation water. The Brown Ditch at one time traversed the property owned or previously owned by Valley, and Weeks with others had an easement for the ditch across that property. Valley subdivided and platted this tract. In doing so it determined that the open ditch to Weeks' land would have to be moved and placed underground in a conduit to make the subdivision feasible. It is alleged that Valley, knowing of Weeks' legal rights to the water and ditch, intentionally destroyed and relocated the ditch with the consent of several of the other ditch owners but without the knowledge or consent of Weeks. The record shows that Valley erected houses on the ground where the ditch was formerly located and sold them to purported good faith purchasers.

Weeks complained in the trial court that she had been deprived of her irrigation water, water right, ditch and ditch right, and had been damaged by a crop loss in 1957 and by pain and suffering.

The prayer of the complaint was for an injunction requiring the defendants to restore the ditch to its former location; that her water right (denied by Valley in its answer) be established in her; that Valley and the other defendants be enjoined from further interference with the water right; and for damages both general and exemplary.

The case was tried to the court without a jury. Findings of fact and judgment were entered against the defendants. The trial court found that it was impossible to restore the ditch to its former course by mandatory injunction because innocent persons had purchased houses from defendants which defendants had constructed on the land where the ditch formerly existed. It did, however, grant other equitable relief (not in issue here) and damages both for loss of Weeks' crops in the amount of $525 and for her pain and suffering in the amount of

$3500, resulting from the alleged intentional invasion of Weeks' property right. The court denied exemplary damages, finding no willful, wanton, evil or malicious disregard on the part of the defendants. Motion for a new trial was dispensed with and the defendants are here by writ of error seeking a reversal.

It is urged that defendants had a right to relocate the ditch without Weeks' consent so long as an adequate substitute was provided and that in finding to the contrary the court was in error. Defendants contend that the substitute was adequate and hence the findings of damages for the loss of crops and for pain and suffering were not warranted.

Our first consideration is directed to whether the defendants had a legal right to destroy the vested property right of plaintiff by providing a substitute deemed adequate by them without securing her consent. To support their contention the defendants place great reliance upon the case of *Brown v. Bradbury* (1941), 110 Colo. 537, 135 P. (2d) 1013, which found in favor of the defendant under somewhat similar facts and in so finding quoted from the earlier case of *Stuart v. Jefferson County* (1914), 25 Colo. App. 568, 139 Pac. 577. It was said in *Stuart* that "Davis had neither a legal nor an equitable right, as against the plaintiff, to destroy * * * said ditch, or to substitute a buried pipe therefor, without providing for plaintiff other adequate and satisfactory means for receiving his water from said carrier so that his lands could be advantageously irrigated as prior to said change, * * * ."

Upon its face *Brown* would appear to approve the right asserted here, a right in conflict with well settled property law, not only in other jurisdictions, but in our own as well. However, we think that to attribute such result to *Brown* is to misconstrue its true meaning and intent, for there the trial court under its equitable powers imposed conditions on the removal fully recognizing the *Stuart* case doctrine, part of which it cited as set

forth above. This court merely held that on the record presented there it would not disturb an equitable judgment.

*Cherrichigno v. Dickinson* (1917), 63 Colo. 443, 167 Pac. 1178, clearly states the rule that an owner of a servient tenement has no right for his own convenience or profit to change the location of a ditch, or to do anything which will interfere with the vested rights of a dominant tenement therein, without the consent of that party. And, in *Kane v. Porter* (1925), 77 Colo. 257, 235 Pac. 561, the contention that one may destroy another's property was strongly rejected. There it was said:

"Defendants, however, say that the cost of the new ditch would be but a trifle and they invoke the maxim *de minimis non curat lex*. That maxim does not apply to the case of positive and wrongful invasion of another's property. 18 C.J. 481. One might as well say that he may knock down my garden fence because it isn't a very good one and I can make another for $3."

We believe that *Cherrichigno* and *Kane* correctly set forth the applicable law except where a trial court has, under its equitable powers in cases involving easements, determined the conditions under which such easement may be altered where other equities have arisen. In cases of the latter type the *Brown* doctrine is applicable.

It will be noted that even in *Stuart*, supra, the court speaks frequently of the "vested rights" of the ditch owner and that any such relocation of the ditch must be to the "satisfaction" of that party. This word was perhaps not emphasized as much as needed for clarity in the final holding of the case, but it was clearly indicated throughout the opinion.

A careful study of the *Brown* opinion leads to the conclusion that it is not unreconcilable with precedent. It will be noted that there the plaintiff's rights, though the location was altered, were not in reality forfeited. He obtained equitable relief very similar to that in the instant case. The court there, as here, merely declined to

order the ditch replaced in its original location after other equities intervened. The result was proper, but the reason misleading, and while the present defendants have been misled by their reliance upon it, they may not insist upon their own interpretation as the basis of their responsibility to the plaintiff.

■ The trial court was correct in holding that Weeks had a vested right in the ditch, and to have her water flow across the defendants' lands, a right that could not be interfered with without her consent. But once the interference and alteration had been accomplished, the trial court had the equitable power to determine what should be done about it.

We next consider whether the trial court erred in finding that Weeks was damaged to the extent of $525.00 for crop loss.

The defendants urge that the finding was not warranted for Weeks herself testified that she neither planted nor attempted to plant a crop during the irrigation season in 1957. From the record it appears that crops had been raised prior to 1957 and subsequent to that year. Weeks' position is that knowing she had no water in 1957 at planting time due to defendant's wrongful acts, nothing but a small amount of hay was raised; that it was her duty to mitigate the damages by avoiding the expense of seed and labor upon the mere hope that water might later be forthcoming; that such useless expenditures would have aggravated the damages. In this she is correct.

■ The rule is well settled that one may not recover damages for an injury which he might by reasonable precautions or exertions have avoided. *Mack v. Jackson* (1886), 9 Colo. 536, 13 Pac. 542; *Denver v. Noble* (1951), 124 Colo. 392, 237 P. (2d) 637. What constitutes a "reasonable" precaution is for the trier of facts to determine upon the evidence. Upon the record before us the trial court was justified in finding for Weeks on this element of damage.

The next question is whether the trial court erred in awarding damages for pain and suffering to Weeks as a result of her invaded property rights without a physical touching of her person.

The answer to this problem is not of easy solution for it lies within one of those fields of jurisprudence where a wide divergence of authority exists with various shades of interpretation and application of the law. See 28 A.L.R. (2d) 1070, et seq., and see *State v. Baltimore Transit Co.* (1951), 197 Md. 528, 80 A. (2d) 13, 28 A.L.R. 1062. Without detailing at length various opinions in the above citations, suffice it to say that under ordinary circumstances there can be no recovery in tort for mental anguish suffered by a plaintiff in connection with an injury to his property, either real or personal. Where, however, the act occasioning the injury to property was inspired by fraud, malice, or like motives, mental suffering is often held to be a proper element of damage. In other words, in the usual case the complaint and proof must show breach of a duty to be the efficient cause of the injury averred. There are, of course, exceptions to the doctrine. For example, "* * * 'where the wrongful act complained of is the proximate cause of the injury * * * and where the injury ought in the light of circumstances to have been contemplated as a natural and probable consequence thereof, the case falls within the exception and should be left to the jury.' This is the same doctrine as was followed in the case of Palsgraf v. Long Island R.R. Company, supra." *State,* supra. Insult or contumely also are elements that have resulted in liability where there has been merely an injury to property or its possession as distinguished from one to the person. *State,* supra, and *Dawsey v. Newton* (1943), 244 Ala. 661, 15 So. (2d) 271. The latter case was one for damages for trespass where the defendants had knowingly entered upon plaintiff's lands and cut down certain oak trees. The plaintiff alleged statutory damages as well as asserting a right to be compensated for "his mental pain

and anguish." Mr. Justice Livingston speaking for the court held that the plaintiff was entitled to nominal damages and that "When a trespass to property is committed under circumstances of insult or contumely (as there where defendants had been forewarned) mental suffering may be compensated for, when it is a proximate consequence." (Citing four earlier Alabama cases.) The court said:

"We are persuaded that under the evidence in this case the question of plaintiff's mental suffering was properly left to the determination of the jury * * *."

Notable among the exceptions to the general rule are those cases dealing with dead bodies and graves (see 12 A.L.R. 342, 113 A.L.R. 1128, 172 A.L.R. 554, 17 A.L.R. (2d) 770); and, of course, those dealing with miscarriages induced by various causes are of common knowledge. Allegation and proof of a willful or wanton tort as distinguished from a negligent injury, seems to be the most common distinction in the authorities. 28 A.L.R. (2d), supra. In cases like *Dawsey,* supra, the liability has been sustained because a defendant or his agent had made a forcible trespass upon realty occupied by the plaintiff under such circumstances of insult or contumely that the mental disturbance or fright of the plaintiff was a condition to be reasonably anticipated. In *Sager v. Sisters of Mercy* (1927), 81 Colo. 498, 256 Pac. 8, defendants' acts were held actionable where the plaintiff's personal belongings were taken from her dwelling and wrongfully destroyed, thus applying the same rule to personal property. Unfortunately, in *Sager* the court did not point out that liability was incurred due to the abusive and unjustified acts of the defendants. There malice in law was implied by defendants' unwarranted conduct.

It is well to point out here that such cases differ from those involving breach of an express or implied contract where liability has been imposed for pain, suffering, invasion of privacy, or humiliation. For example, see *Westesen v. Olathe State Bank* (1925), 78 Colo. 217, 240

Pac. 689 (promised credit denied after acted upon); *Fitzsimmons v. Olinger Mortuary Assoc.* (1932), 91 Colo. 544, 17 P. (2d) 535 (photographing and publicizing removal of a corpse from a chartered plane hired by the mortician); *McCreery v. Miller's Groceteria Company, et al.* (1936), 99 Colo. 499, 64 P. (2d) 803 (unauthorized display of a personal photograph).

In *Hall v. Jackson* (1913), 24 Colo. App. 225, 134 Pac. 151, damages relating to mental pain and suffering are classified in three categories: (A) Cases of pure tort, where no contractual relation exists and the acts complained of are attended with willful and wanton conduct; (B) Cases where a breach of contract has occurred and acts attending such a breach are accompanied by willful, insulting or wanton conduct (in these two categories substantial damages may be recovered for mental suffering alone); and (C) Cases of mere passive breach of contract by one not engaged in a business of a quasi public nature, where the breach is unintentional and not accompanied by wanton, willful or insulting acts. In such case damages for mental suffering are not recoverable.

*Hall* also points out that "It may be said with safety that at common law no action could be maintained to recover for mental suffering in the absence of bodily injury occasioning such suffering." The law has moved from that position far forward today as the authorities referred to testify.

Turning now to the facts and findings in the instant case. First it appears that although Weeks was under treatment for a nervous condition supposedly brought on by defendants' alleged intentional conduct, the record suggests that treatment for such ailment was begun in 1955 following the death of her husband and when defendants sought to condemn a sewer line across her property. The ditch matter did not arise until 1957, and Weeks' testimony was that she did not know of the destruction of the ditch until March of that year.

Secondly, as mentioned earlier, the trial court found no willful and wanton conduct on the part of defendants, thus the case does not fall within either the first category of *Hall,* supra, or within any of the other exceptions noted. This finding, based upon disputed evidence, will not be disturbed on review. *A fortiori,* in the absence of such a finding, no basis for the award of such damages appears, hence it was error for the trial court to award damages in any amount to plaintiff for mental pain and suffering.

Lastly, defendants urge that the court should not have granted Weeks judgment against individual defendants who were officers of the corporation, but should have limited liability, if any, to Valley.

In *Snowden v. Taggart* (1932), 91 Colo. 525, 17 Pac. (2d) 305, it was held that the agents of a corporation who commit a tort while acting for the corporation are personally liable, and may not escape liability by hiding behind the corporate shield. Though the trial court found these individual defendants were not guilty of willful or wanton conduct, it did not find them free of fault. In this state of the record the court was justified in finding the individual defendants jointly and severally liable with the corporation.

The parties having indicated in their oral argument before this court that Weeks is now willing to accept the substitute easement, no further discussion is had thereon. We find in this connection that the record supports the conditions attached and the burdens imposed by the trial court respecting the liability of defendants for the future use and maintenance of the substitute conduit.

No other matters constituting error appearing in the record, the judgment is reversed as to the award of the $3500.00 for pain and suffering, in all other respects it is affirmed.

Mr. Justice Moore and Mr. Justice McWilliams concur in the result.

Mr. Justice Day not participating.