ROARING FORK CLUB, L.P., Petitioner,

v.

ST. JUDE'S COMPANY, Respondent.

No. 00SC372.

Supreme Court of Colorado,
En Banc.

Nov. 19, 2001.

As Modified on Denial of Rehearing
Dec. 17, 2001.

Hale Hackstaff, Tymkovich & Erkenbrack, LLP, Timothy M. Tymkovich, Richard A.

Westfall, John R. Paddock, Jr., Denver, CO, Patrick, Miller & Kropf, PC, Kevin L. Patrick, Scott C. Miller, Aspen, CO, Attorneys for Petitioner.

Gregory J. Cucarola, Sterling, CO, Attorney for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

### I.

In this case we address the unilateral alteration of irrigation ditches. St. Jude's Company (hereinafter Ranch) owns 240 acres of agricultural land near Basalt, Colorado. Roaring Fork Club, L.P., (hereinafter Club) acquired the neighboring, upgradient property adjoining Ranch's in 1995. Previously, the owner of Club's land had used it for agricultural purposes; however, Club developed the property for recreational use by building a private fishing and golf club.

Club and Ranch share an interest in three irrigation ditches that traverse Club's property and serve both properties. Seeking to alter the ditch course in order to accommodate its golf and fishing development, Club attempted to contract with Ranch either to purchase portions of Ranch's easement or to formalize a ditch maintenance arrangement. However, the parties were unable to reach such an agreement. Nevertheless, Club moved forward with construction in and around the ditches.

In 1997 Ranch initiated a trespass action against Club seeking a mandatory and permanent injunction requiring Club to restore the ditches to their original location and course and to remove those improvements that prevented Ranch from maintaining the ditches. The case proceeded before the trial court, acting in equity.

Following three days of trial, the court found that Club had excavated within Ranch's rights-of-way, graded and destroyed ditch banks and portions of ditches, realigned ditch channels, diverted ditch water flows, piped portions of ditches, constructed cabins and golf course greens within the easements, and temporarily piped wastewater into one of the ditches.

As a result, the trial court concluded that Club had committed trespass on Ranch's easements. The court also stated that because Ranch sought an equitable remedy, the court was required to balance the equities between the parties in fashioning an appropriate remedy. Weighing the equities, the court found that Club never denied Ranch access to the ditches or denied it the opportunity to maintain the ditches; that Ranch had not suffered any diminution in the quantity of water delivered through the system; and that Ranch had not suffered any increased cost in maintenance of the ditches because of the development. The court also found that Ranch's traditional disposition of spoilage and maintenance of the ditches would be inconsistent with Club's use of its property for recreational purposes. Finally, the court found that requiring Club to restore the ditches to their condition prior to trespass would be extremely costly and would substantially interfere with Club's current and ongoing use of its property.

The trial court concluded that Ranch was entitled to injunctive relief in one of two forms. The court held that Club must either remove all of the developments that reasonably interfered with entry, access, and maintenance of the ditches and restore the original ditches as prayed for by Ranch (the "restoration" option), *or* Club could assume all responsibility for, and expense of, operation and maintenance of the ditches on its property, and would be permanently obligated to deliver, upon demand, water to Ranch in the amount and quality, and at the time consistent with, Ranch's adjudicated rights (the "maintenance and delivery" option). The trial court clarified in a post-trial order that the right to choose between the alternative remedies imposed by the injunction belonged to Club. Club exercised the maintenance and delivery option, and Ranch appealed the trial court's disposition of the case.

On appeal, a majority of the court of appeals reversed, in part, the injunction formulated by the trial court, holding that the maintenance and delivery option did not comply with Colorado law. *St. Jude's Co. v. Roaring Fork Club, L.P.*, 15 P.3d 281, 285 (Colo.App.1999). Further, the court of appeals held the trial court order unjustifiably rewarded Club, a bad faith actor, for deliberate and conscious trespass. *Id.*

We granted certiorari to determine two issues. The first issue is whether the court of appeals properly applied *Valley Development Co. v. Weeks*, 147 Colo. 591, 364 P.2d 730 (1961), and *Brown v. Bradbury*, 110 Colo. 537, 135 P.2d 1013 (1943), to preempt the trial court's exercise of its equitable discretion; and the second is whether the court of appeals erred by requiring the trial court to award injunctive relief.

We now hold that the owner of property burdened by a ditch easement (hereinafter "burdened estate") may not move or alter that easement unless that owner has the consent of the owner of the easement (hereinafter "benefitted estate"); OR unless that owner first obtains a declaratory determination from a court that the proposed changes will not significantly lessen the utility of the easement, increase the burdens on the owner of the easement, or frustrate the purpose for which the easement was created. We further clarify that the right to inspect, operate, and maintain a ditch easement is a right that cannot be abrogated by alteration or change to the ditch. Therefore, we affirm that portion of the court of appeals' judgment upholding the trial court finding of trespass upon Club's unilateral alteration of the easement. However, we remand this case for further proceedings in light of our interpretation of Colorado case law as set forth in this opinion.

II.

Ditches are important to Colorado. They permit a landscape, economy, and history in which fertile valleys prosper. Without them, properties adjacent to or distant from watercourses wither. Colorado is not a riparian state in which only those lands adjacent to the streams and rivers have rights to waters. Rather, as early as the tenure of the territorial legislature, our lawmakers recognized that our arid climate required the creation of a right to appropriate and convey water across the land of another so that lands not immediately proximate to water could be

used and developed. Colorado Territorial Laws 67 § 2 (1861) *reprinted in* Gregory J. Hobbs, *Colorado Water Law: An Historical Overview*, 1 U. Denv. Water L.Rev. 1, 31 (1997) ("That when any person, ... [whose] farm or land, used by him for agricultural purposes, is too far removed from said stream ..., [that person] shall be entitled to a right of way through the farms or tracts of land which lie between him and said stream...."). By the time of passage of our constitution, that right was embodied in Article XVI, § 7, which provides, "All persons and corporations shall have the right-of-way across public, private and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands and for mining and manufacturing purposes, and for drainage, upon payment of just compensation." The statute that the first legislative assembly enacted in 1861 has now become section 37–86–102, to wit: "Any person owning a water right or conditional water right shall be entitled to a right-of-way through the lands which lie between the point of diversion and point of use or proposed use for the purpose of transporting water for beneficial use in accordance with said water right or conditional water right." § 37–86–102, 10 C.R.S. (2001).

■ Because ditches are important, so too are the rights attendant upon a ditch easement. The holder of a ditch easement has the right to inspect, operate, maintain, and repair the ditch. *Osborn & Caywood Ditch Co. v. Green*, 673 P.2d 380, 383 (Colo.App. 1983) ("[T]he owner of the easement, or dominant estate, may do whatever is reasonably necessary to permit full use and enjoyment of the easement including the exercise of rights of ingress and egress for maintenance, operation, and repair."); *see also Yunker v. Nichols*, 1 Colo. 551, 555 (1872) ("It may be said, that all lands are held in subordination to the dominant right of others, who must

necessarily pass over them to obtain a supply of water to irrigate their own lands....").

■ The *Green* decision also directs that, while burdened estate owners have a qualified right to cross, and take equipment across, a benefitted estate owner's ditch, they cannot damage the ditch or unreasonably inhibit the benefitted estate owner's ability to maintain the ditch. *Green*, 673 P.2d at 383. "The right to maintain a ditch, canal or aqueduct across the lands of another necessarily implies the right to go on such lands for the purpose of cleaning out the waterway and making other proper repairs...." 93 C.J.S. *Waters* § 130(c)(1) (1956).

Additionally, the Colorado legislature has required "ditch owners" to undertake a host of duties in relation to ditch upkeep. *See* §§ 37–84–101 to –120, 10 C.R.S. (2001).[1] Many of those statutes permit and even require the benefitted estate owner to have direct access to the entire length of the ditch. Therefore, we approach the issues before us in this case with due regard for the importance of ditches and ditch rights under the law.

## III.

The first question we must answer is whether Club had the right to move the ditch that served both its property and Ranch's property, because the answer to that question then shapes any inquiry about appropriate remedy.

### A.

Although there are clearly some distinctions, we begin by reviewing the law as it relates to road and other easements. The majority rule in the United States prohibits burdened estate owners from unilaterally relocating easements. Note, *The Right of Owners of Servient Estates to Relocate Easements Unilaterally*, 109 Harv. L.Rev. 1693,

---

1. We note that Colorado's criminal statutes forbid the cutting, obstructing, altering or damaging of a ditch coupled with either the intent to cause injury or to steal or divert water in order to profit personally. § 37–89–101, 10 C.R.S. (2001). The legislature amended this statute in 2001 requiring those convicted of the offense to make full restitution to the victim for actual damages sustained. H.B. 01–1250, 2001 Leg., 1st Sess. (Colo.2001). The statute demonstrates the high level of concern the legislature has for the structures that convey water in our state. Ch. 272, sec. 1, § 37–89–101, 2001 Colo. Sess. Laws 988.

1693 (1996) ("In the majority of jurisdictions in the United States, neither the owner of the dominant estate nor the owner of the servient estate may unilaterally relocate an easement once it has been fixed."); *see also* 28A C.J.S. *Easements* § 157 (1996) ("As a general rule, in the absence of contrary statutes, the location of an easement when once established cannot be changed by either party without the other's consent."). The traditional rule emerged out of the notion of reciprocity; since the benefitted estate owner could not unilaterally move the easement, neither could the burdened estate owner. *See* Restatement (Third) Of Property (Servitudes) § 4.8 cmt. f (2000).

This traditional rule has historically governed ditch easements as well. *See* 93 C.J.S. *Waters* § 192(b)(2) (1956) ("In the absence of statute, the owner of the servient estate has no right to change the place or location of an appropriator's ditch."); *Archibeck v. Mongiello,* 58 N.M. 749, 276 P.2d 736, 739 (1954) (applying general prohibition on moving easements to ditch easement); *Lunn v. Schmidt,* No. 49537, 1985 WL 8129, at *4, 1985 Ohio App. LEXIS 8840, at *12 (Ohio Ct.App. Oct. 17, 1985) ("The plaintiffs correctly state the general rule that neither the dominant landowner nor the servient landowner may materially alter the easement without the consent of both parties. The placing of closed pipe in a drainage ditch, constitutes a material alteration.").

### B.

Colorado's first case on point is *Cherrichigno v. Dickinson,* 63 Colo. 443, 167 P. 1178 (1917), which follows the majority rule in holding that a property owner has "no right for his own convenience or profit to change the location of a ditch, or to do anything which will interfere with the vested rights of" a benefitted estate therein, without consent of the benefitted estate. *Id.* at 445, 167 P. at 1178.

The next case was *Brown v. Bradbury,* 110 Colo. 537, 135 P.2d 1013 (1943), in which the plaintiffs owned a ditch easement that bisected defendant Bradbury's estate. The ditch ran near Bradbury's home and "Mrs. Bradbury was fearful that their small son might fall into it and be drowned." *Id.* at 538, 135 P.2d at 1013. Mr. Bradbury unilaterally substituted a new ditch away from the house, which ran along a road right of way that Brown also owned on Bradbury's estate. The new ditch conveyed water to Brown's property "in the same or increased quantity as before." *Id.* Brown sought an injunction to restore the old ditch, asserting irreparable injury. The trial court, however, found that damages were "insignificant and immeasurable." *Id.* at 539, 135 P.2d at 1013. The trial court allowed the ditch to remain in its new location but ordered Bradbury to eliminate certain curves in the new ditch and shifted to him the burden of repairing, maintaining, and keeping the ditch "in such condition as to insure the delivery of the same amount of water." *Id.* at 538, 135 P.2d at 1013.

On appeal, this court found no abuse of discretion in the trial court's order and cited *Stuart v. County Commissioners,* 25 Colo. App. 568, 580, 139 P. 577, 581 (1914), for the proposition that a defendant cannot destroy a ditch easement "without providing for plaintiff other adequate and satisfactory means for receiving his water from said carrier so that his lands could be advantageously irrigated as prior to said change." *Brown,* 110 Colo. at 538, 135 P.2d at 1014.

Several years later, relying on the *Stuart* and *Brown* holdings, Valley Development Co. (Valley) substituted an underground pipe for a ditch easement to convey water across their property to defendant Weeks. *Valley Dev. Co. v. Weeks,* 147 Colo. 591, 593, 364 P.2d 730, 731 (1961). Valley subdivided its land and then built and sold homes to good faith purchasers. Weeks sought an injunction requiring Valley to restore the ditch to its former location and also sought damages "both general and exemplary." *Id.* The trial court held generally for Weeks, but then found that "it was impossible to restore the ditch to its former course by mandatory injunction because innocent persons had purchased houses." *Id.* The court granted unspecified "other equitable relief" and monetary damages, excluding exemplary damages.

In reviewing *Weeks* on appeal, we observed that Valley had "misconstrued" the true meaning and intent of *Brown. Id.* at 594, 364 P.2d at 732. Correcting the misunderstanding, we explained that the *Brown* court "merely held that on the record presented there it would not disturb an equitable judgment." *Id.* at 595, 364 P.2d at 732. We then reiterated Colorado's settled easement rules as set forth in *Cherrichigno v. Dickinson:* "[A]n owner of a servient tenement has 'no right for his own convenience or profit to change the location of a ditch, or to do anything which will interfere with the vested rights of' a dominant tenement therein, without the consent of that party." *Id.* (quoting *Cherrichigno v. Dickinson,* 63 Colo. 443, 445, 167 P. 1178, 1178 (1917)).

Still, we upheld the trial court's refusal to order the ditch restored. We found that *Cherrichigno* controls "*except* where a trial court has, under its equitable powers in cases involving easements, determined the conditions under which such easement may be altered where other equities have arisen. In cases of the latter type, the *Brown* doctrine is applicable." *Id.* (emphasis added). Finally, we stated that "once the interference and alteration had been accomplished, the trial court had the equitable power to determine what should be done about it." *Id.* at 596, 364 P.2d at 732.

Accordingly, we find ourselves at the onset of the 21st century with competing land uses in Colorado proliferating and somewhat unclear common-law precedent as to the interlocking rights of estates benefitting from easements and those estates burdened by them. On the one hand, *Cherrichigno* states unequivocally that a burdened estate owner may not move a ditch easement without the consent of the benefitted estate owner. *Cherrichigno,* 63 Colo. at 445, 167 P. at 1178. On the other hand, *Stuart* indicates it can be done if the burdened owner provides an adequate substitute. *Stuart,* 25 Colo.App. at 580, 139 P. at at 581. Similarly, both *Brown* and *Weeks* stand for the proposition that a ditch easement need not be restored to its original course and condition when equity dictates otherwise.

## IV.

We observe that the development of the common law on point appears to serve two purposes: first, that ditch easements are a property right that the burdened estate owner may not alter absent consent of the benefitted owner; and second, that there may be some circumstances in which such alteration would work no harm to the benefitted owner and would greatly serve the burdened owner. Our resolution of this case honors both of those precepts. Accordingly, we first affirm both the trial court and court of appeals finding that Roaring Fork (Club) trespassed upon St. Jude's (Ranch's) easement by unilaterally altering it. For that trespass, Ranch may well be entitled to damages. *Bobrick v. Taylor,* 171 Colo. 375, 379–80, 467 P.2d 822, 824 (1970) (affixing award for trespass at cost of restoration); *see also Engler v. Hatch,* 472 P.2d 680, 683 (Colo.App. 1970) (not selected for publication) (finding the cost of restoration is a proper award even though restoration not ordered). Other trespass cases award actual and even punitive damages where appropriate. *Proper v. Greager,* 827 P.2d 591, 597 (Colo.App.1992) ("[I]f necessary to grant an injured party complete relief for past interference with his easement, the court may also award monetary damages"); *Campbell v. Kelsall,* 717 P.2d 1019, 1019–20 (Colo.App.1986) (awarding benefitted owner actual and punitive damages in trespass where burdened owner unilaterally destroyed a ditch easement). However, the trial court may also find that such trespass does not warrant exemplary damages and that monetary damages are either incalculable or unproven. In such cases, nominal damages are appropriate. *See* CJI–Civ. 4th 18:3.

Second, however, we recognize that Ranch may or may not be entitled to restoration of the easement depending upon the test we set forth below. It is in this area that we seek to clarify the law trial courts should apply when determining whether or not to order restoration of an altered easement.

## V.

In other areas of property law, the law in Colorado has begun to recognize that the

competing uses between two interested owners should be accommodated, if possible, and that inflexible notions of dominant and servient estates do little to advance that accommodation. In *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313 (Colo.App.1996) (hereinafter *Lazy Dog I* ), *cert. denied*, *Lazy Dog Ranch v. Telluray Ranch Co.*, No. 96SC252, 1996 Colo. LEXIS 374 (Colo. Sept. 3, 1996), the court of appeals upheld a trial court's imposition of a "compromise" between competing landowners subject to an easement. *Id.* at 317–18. There, both the plaintiff and the defendant shared a road that ran along a common property line. The plaintiff planned to subdivide his property for residential development; the defendant operated a cattle ranch. Over the plaintiff's objections, the defendant sought to gate the shared road at both ends. As a solution, the trial court ordered the plaintiff to install cattle guards, while also ordering that if the defendant needed to move the cattle guards at a later date, the defendant would bear those costs. *Id.* at 316; *see also Schold v. Sawyer*, 944 P.2d 683, 685 (Colo.App.1997) (holding the burdened estate's erection of cattle guards permissible when they do not unreasonably interfere with the right of way).

An equitable solution maximizes the usage both owners seek for their respective properties. This doctrine, however, does not apply where either owner seeks unreasonable uses. In *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1357 (Colo.App.1995), the court of appeals properly ordered restoration when an alteration effectively eliminated one-third of a parking space easement. In *Mid–America Pipeline Co. v. Lario Enterprises, Inc.*, 942 F.2d 1519 (10th Cir.1991), the Tenth Circuit Court of Appeals, applying Kansas law, ordered restoration of a buried pipeline easement after the defendants had built a racetrack on top of it, because of the damage to the owner of the easement. *Id.* at 1521.

Analogously, surface estate owners and severed mineral owners have interests that are frequently at odds. In that context, the direction of the law in Colorado has also been toward the accommodation doctrine, in requiring that, whenever possible, the uses must be exercised consonantly with one another. *See Gerrity Oil v. Magness*, 946 P.2d 913, 927 (Colo.1997) ("The fact that neither the surface owner nor the severed mineral rights holder has any absolute right to exclude the other from the surface may create tension between competing surface uses. 'The broad principle by which these tensions are to be resolved is that each owner must have due regard for the rights of the other in making use of the estate in question.' ") (citing *Grynberg v. City of Northglenn*, 739 P.2d 230, 234 (Colo.1987)). In litigation subsequent to *Lazy Dog I*, this court reiterated the balancing of interests approach and applied it to resolve the easement usage dispute. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1238 (Colo.1998). We determined that "both the holder of the easement and the owner of the land burdened by the easement have rights to use the property. Consequently, the interests of both parties must be balanced in order to achieve due and reasonable enjoyment of both the easement and the servient estate." *Id.* (citing *Riddell v. Ewell*, 929 P.2d 30, 31 (Colo.App. 1996); *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1357 (Colo.App.1995); *Osborn & Caywood Ditch Co. v. Green*, 673 P.2d 380, 383 (Colo.App.1983); Restatement (Third) of Property § 4.9 cmt. c; 7 Thompson, *Thompson on Real Property* § 60.04(a)(1), at 451 (Thomas ed.1994); 25 Am.Jur.2d *Easements* 81 (1996)).

Other jurisdictions have applied a variation of the accommodation doctrine to easements and have permitted the burdened estate owner to move an easement so long as the new location affords benefits that are substantially similar to those previously enjoyed by the benefitted estate. *See, e.g., Lewis v. Young*, 92 N.Y.2d 443, 682 N.Y.S.2d 657, 705 N.E.2d 649, 654–55 (1998); *see also* Note, *supra*, at 1693. More importantly, the most recent Restatement on Property adopts an approach that gives as much freedom of use as possible to the burdened owner, subject to the requirement that the benefitted owner not be damaged. Restatement (Third) Of Property (Servitudes) § 4.8 cmt. f (2000). The Restatement articulates the balance between burdened and benefitted estate holders as follows:

Unless expressly denied by the terms of an easement, ... the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not

a) significantly lessen the utility of the easement,

b) increase the burdens on the owner of the easement in its use and enjoyment, or

c) frustrate the purpose for which the easement was created.

Restatement (Third) of Property (Servitudes) § 4.8(3) (2000). Accordingly, under the Restatement, a burdened estate owner may unilaterally move an easement (unless it is specified in deeds or otherwise to have a location certain), subject both to a reasonableness test and to the constraints delimited in the rule.

### A.

The Restatement approach allows a burdened property owner such as Club to move or alter a ditch easement in order to maximize the use of its own property—PROVIDED that such alteration does not damage the benefitted estate owner. Such an approach is most consistent with Colorado law, including the line of authority directly related to ditch easements, and represents the better approach to resolve the competing equities.

Arguments in favor of the Restatement rule emphasize that it maximizes the overall utility of the land. The burdened estate profits from an increase in value while the benefitted estate suffers no decrease. Restatement (Third) of Property (Servitudes) § 4.8 cmt. f. Further, the burdened owner is free to make the most economic use of her land, including uses unforeseen when the easement originated (e.g., outdoor recreation clubs). Without so stating, *Brown* and *Weeks* essentially applied the Restatement

rule by allowing burdened estate owners to alter the ditch over the benefitted estate owner's objections. Both courts would have achieved the same result under the Restatement rule; the moves were reasonable, inflicted no hardship upon the benefitted estate, and did not frustrate the purpose or lessen the utility of the easement.

Other jurisdictions grappling with unilateral easement relocations have reached similar conclusions. In *Fleischmann v. Hearn*, 141 Md. 463, 118 A. 847, 849 (1922), Maryland's highest court stated: "A mandatory injunction will of course be denied where damages will constitute an adequate remedy; where the obstruction does not constitute a material interference with the rights of the owner of the easement; or where the damages sustained are merely nominal." *Id.* (citations omitted). The court continued:

The Court should consider the relative expense and inconvenience which it would occasion to the parties; in other words, "the balance of injury"; and should refuse to grant the injunction wherever it would operate inequitably and oppressively. While there is some authority to the contrary, the better view is that a mandatory injunction will be denied and plaintiff left to his remedy at law, where the expense of [restoration] is greatly disproportionate to the benefit to be derived by the owner of the easement, and where in addition thereto a merely technical right has been violated resulting in no actual damage; where the removal would bring no actual advantage to the owner of the easement.

*Id.* (citations omitted). Idaho has decreed by statute that burdened estate owners may unilaterally alter an irrigation easement. *Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho 544, 808 P.2d 1289, 1294 (1991) ("In Idaho easements for irrigation laterals are also subject to the servient estate owner's right to move the lateral at his own expense. Idaho Code § 42–1207 allows such a change when it does not impede the flow of water or injure any person using the lateral ditch.").[2]

2. Idaho Code § 42–1207 (Michie 1996) provides: Where any lateral ditch or buried irrigation conduit has heretofore been, or may hereafter be, constructed across or beneath the lands of

another, the person or persons owning or controlling said land shall have the right at their own expense to change said lateral ditch or buried irrigation conduit to any other part of

Furthermore, we note that the policy arguments in support of the traditional rule that a burdened owner may never move or alter a ditch easement may no longer apply. It appears that the traditional rule originated from a general precept that prohibited burdened owners from *obstructing* easements. Over time, the rule extended to other areas, including unilateral *alterations.* Note: *Balancing the Equities: Is Missouri Adopting a Progressive Rule for Relocation of Easements?*, 61 Mo. L.Rev. 1039, 1042–45 (1996) (hereinafter *Balancing the Equities* ).

According to the Arizona Supreme Court, "The reason for [the traditional] rule is that treating the location as variable would incite litigation and depreciate the value and discourage the improvement of the land upon which the easement is charged." *Stamatis v. Johnson,* 71 Ariz. 134, 224 P.2d 201, 203 (1950), *modified,* 72 Ariz. 158, 231 P.2d 956 (1951). In fact, in both *Weeks* and *Brown,* the burdened owner's estate was arguably *more* valuable after the easement alterations, while the benefitted estate remained unchanged—a seminal assumption.

The Supreme Judicial Court of Maine rejected the unilateral modification of an easement that kept the same ingress and egress points because it "confer[s] an economic windfall on the servient owner, who presumably purchased the land at a price which reflected restraints existing on the property." *Davis v. Bruk,* 411 A.2d 660, 665 (Me.1980). That statement could just as easily provide support for, rather than opposition to, the Restatement rule. The point is that each property owner ought to be able to make the fullest use of his or her property allowed by law, subject only to the requirement that he or she not damage other vested rights holders. The Restatement rule simply maximizes overall benefit by helping one party without hurting the other. Lifting only the locational constraints, while the easement itself remains constant, facilitates that utility. In any case, the "windfall" will be tempered

by the burdened estate owner incurring the expense of moving the easement and ensuring it conforms to the rule's strictures.

The old rule creates a "bilateral monopoly" in that neither owner can transact with anyone else. Note, *supra,* at 1701. While the Restatement rule "imposes upon the easement holder the burden and risk of bringing suit against an unreasonable relocation," it "far surpasses in utility and fairness the traditional rule that left the servient land owner remediless against an unreasonable easement holder." *Balancing the Equities, supra,* at 1060. The Restatement rule operates to redistribute the (one-sided) burden the traditional rule places on the estate burdened by the easement. Under either rule, the courts will determine controversies in which the benefitted owner claims that the burdened owner has proceeded unreasonably.

■ Therefore, based upon the direction implicit and explicit in our case law and the practical realities of competing property uses, we accept section three of the Restatement (Third) of Property as the correct statement of controlling legal principle for purposes of analyzing a ditch easement relocation or alteration.

### B.

■ We must now reconcile the notion that interference with a ditch easement without consent constitutes trespass, with the Restatement doctrine. Clearly, the best course is for the burdened owner and the benefitted owner to agree to alterations that would accommodate both parties' use of their respective properties to the fullest extent possible. Barring such an agreement, we do not support the self-help remedy that Club exercised here. When a dispute arises between two property owners, the court is the appropriate forum for the resolution of that dispute and—in order to avoid an adverse ruling of trespass or restoration—the burdened owner should obtain a court declara-

---

said land, but such change must be made in such a manner as not to impede the flow of the water therein, or to otherwise injure any person or persons using or interested in such lateral ditch or buried irrigation conduit. Any increased operation and maintenance shall be

the responsibility of the landowner who makes the change.

A landowner shall also have the right to bury the ditch of another in pipe on the landowner's property. . . .

tion before commencing alterations. If a burdened owner seeks to move or alter a ditch easement and the benefitted owner refuses to consent, then the burdened owner may seek a declaratory determination from a court that the alteration does not damage the benefitted owner(s) in accordance with the Restatement test. Declaratory judgments are a familiar mechanism in easement disputes. Parties employ them to determine the existence, scope, and location of easements. *See e.g., Bijou Irrigation Dist. v. Empire Club,* 804 P.2d 175 (Colo.1991); *Riddell v. Ewell,* 929 P.2d 30 (Colo.App.1996). Similarly, in a declaratory judgment proceeding concerning a proposed easement alteration, a judge would apply the Restatement rule to determine whether the planned changes pass the three-prong test.[3]

Such a procedure gives a forum both to the burdened owner, who seeks to make alterations that will genuinely cause no damage to the benefitted owner and will increase his own property uses, and to the benefitted owner, who can demonstrate that changes would, in fact, cause damage. In evaluating damage, or the absence of damage, the trial court must not only look at the operation of the ditch for the benefitted owner, but also look at the maintenance rights associated with the ditch. If the maintenance rights of the owner of the ditch easement are adversely affected by the change in the easement, then such change does not comport with the Restatement requirements. Furthermore, the water provided to the ditch easement owner must be of the same quantity, quality, and timing as provided under the ditch owner's water rights and easement rights in the ditch. A water right operating in combination with the collection of rights and obligations are vested property rights. *See Weeks,* 147 Colo. at 596, 364 P.2d at 732. They cannot simply be replaced with the mere "delivery" of a fixed quantity of adjudicated water.[4] Ditches are linear delivery systems that function as a part of a whole.

## VI.

Finally, we return to the proceedings in this case, to date and on remand. Again, we note that the trial court found Club had committed trespass, and we agree. Nonconsensual, unilateral alterations jeopardize valuable vested property rights both in the easement and in the water rights exercised by means of the ditch. Club had neither the consent of Ranch nor the permission of the court to make the alterations to the ditch. For that trespass, the trial court is entitled to fashion a remedy at law or in equity. Here, the trial court could shift maintenance burdens and responsibilities as a part of equitable relief, *see Brown,* 110 Colo. at 538, 135 P.2d at 1013, but subject to the right of Ranch to enter and maintain the substitute facility and also to charge the cost to Club, should Club fail in its court-ordered maintenance obligation. However, we further recognize that by this opinion we have identified a remedy that was not previously clear in the law: namely, the right of the burdened owner to go to court and seek a

---

**3.** In seeking such a determination, the burdened owner would presumably first present to the court a prima facie case that the alteration would cause no damage under the Restatement Rule. A successful showing would create a presumption, and, like other legal presumptions, this one would shift the "burden of production" to the benefitted owner to establish damage. CRE 301. The benefitted owner must then come forward and demonstrate the actual damage the alteration would cause. If the burdened owner made a prima facie showing of no damage, and the benefitted owner chose not to participate, or brought forth evidence of damage insufficient to rebut the presumption, then the court would enter a declaration of rights permitting the burdened owner to undertake specific alterations. However, if the benefitted owner successfully demonstrated damage, then the court should decline to permit the alteration. See *Colorado Civil*

*Rights Commission v. Big O Tires,* 940 P.2d 397, 401 (Colo.1997) and *Bodaghi v. Department of Natural Resources,* 995 P.2d 288, 296 (Colo.2000) for applications of similar burden shifting.

**4.** Just as water rights owners have a right to maintenance of stream conditions existing at the time of their appropriations, so too do ditch owners have the same right. The right to water through a ditch across another property is not merely a "delivery" right to an adjudicated amount. For example, a court evaluating whether an alteration to a ditch system caused or would cause damage to a ditch easement owner's rights could examine whether the original ditch permitted the down gradient owner to take advantage of run-off water in a way that would be interrupted by the new location.

declaration that proposed alterations will not damage the benefitted owner. If Club had sought that remedy, rather than engaging in self-help, it might have won the right to alter the ditch easement upon the court finding that the changes comported with the Restatement rule.

Accordingly, to resolve the issues before us, we direct the trial court first to determine whether the alterations to the ditch cause damage under the Restatement test. In making that determination, the trial court may rely upon previous testimony or may request or permit additional testimony within its discretion. If the answer is that the alterations do cause damage to Ranch (taking into account maintenance as well as water rights benefits), then the trial court must order restoration of the ditch easement to its original course. If the answer is that Club's alterations do not cause damage, then the alterations may remain in place. Because we have only today identified the declaratory judgment action as an avenue for burdened estate owners that legitimately believe the anticipated changes will work no harm, we permit Club to attempt to prove in this case that Ranch has incurred no damage. We nonetheless clearly disapprove of Club's self-help approach in this case and similarly disapprove any unilateral alterations by burdened estate owners in the future.

In sum, this holding serves two purposes, both in line with Colorado precedent. First, parties seeking to alter easements, and who cannot secure the consent of the other estate, may address the courts for permission in line with the Restatement test. Second, when a party unilaterally alters an easement without the court's or the other estate owner's permission, a court will still apply the Restatement test to evaluate the legitimacy of the alteration, but may also impose equitable and legal remedies to redress the trespass.

## VII.

Accordingly, we answer the first question on certiorari by holding that the owner of property burdened by a ditch easement has no right to move or alter the easement without consent of the benefitted owner unless he first obtains a declaration of a court that such alterations will cause no damage to the benefitted owner. Such a determination should be made with reference to the Restatement doctrine, as consistent with *Brown* and *Weeks*. Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part. We remand this case first to determine whether Club's alteration of the easement was reasonable and otherwise satisfied the criteria of Restatement (Third) of Property (Servitudes) § 4.8(3) (2000); namely, that the change does not significantly lessen the utility of the easement, increase the burdens on the owner of the easement, or frustrate the purpose for which the easement was created. If the alteration does not meet this test, the court must order restoration. Further, Ranch is entitled to an order allowing it to inspect, maintain, operate, and repair the ditch easement and water structure, irrespective of the allocation of costs and burdens of maintenance that might form part of equitable relief.