2012 COA 130

**John Chris LONG, Plaintiff–Appellant,**

v.

**COLORADO DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, Defendant–Appellee.**

**No. 11CA1646.**

Colorado Court of Appeals, Div. VII.

Aug. 2, 2012.

Rehearing Denied Sept. 6, 2012.

The Law Office of Monica S. McElyea, LLC, Monica S. McElyea, Breckenridge, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Cathern H. Smith, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge BOORAS.

¶ 1 Plaintiff, John Chris Long, appeals the district court judgment affirming an administrative order entered by defendant, the Colorado Department of Revenue, Motor Vehicle Division (the Department). The Department revoked plaintiff's driver's license for one year based on his refusal to submit to testing as required by Colorado's express consent law. We affirm.

## I. Background

¶ 2 At approximately 12:42 a.m. on November 6, 2010, a Leadville police officer stopped plaintiff for speeding and for weaving in and out of his traffic lane. Upon contacting him, the officer noted indicia of alcohol intoxication. After plaintiff failed to complete voluntary roadside tests satisfactorily, the officer placed him under arrest and advised him of his options under the express consent statute.

¶ 3 Plaintiff chose a breath test and was transported to the Lake County Sheriff's Office, where a deputy certified to operate the breathalyzer machine arrived to administer the test. After the twenty-minute observation period, the deputy turned on the breathalyzer machine, and it indicated that it was not operating properly and needed solution. The deputy then restarted the machine, and the machine's printout indicated that it was working properly and "had 96 more tests to perform before it actually needed solution." The deputy explained to plaintiff that the breathalyzer was working properly, but plaintiff refused to take the test because he thought the machine was "messed up." He also asked if he could wait "ninety-six more tests before he took his." The deputy said no and explained to plaintiff that he did not have to take the test, but if he chose not to take it, his conduct would constitute a refusal. Plaintiff refused to take the test. Based on the refusal, the officer issued plaintiff an

express consent affidavit and notice of revocation (notice of revocation). The document notified plaintiff that on that date he had been asked to submit to a chemical test pursuant to Colorado's express consent statute, section 42–4–1301.1, C.R.S.2011. Furthermore, the notice stated it was his "official order"; indicated that because he had refused to take, complete, or cooperate in a test of his blood, breath, saliva, or urine, his driver's license was revoked subject to the administrative provisions of section 42–2–132, C.R.S.2011; and advised him that he had the right to request a hearing under section 42–2–126, C.R.S.2011. Plaintiff signed the affidavit and surrendered his license to the officer.

¶ 4 Plaintiff timely requested an administrative hearing to challenge the revocation. Having considered the evidence and plaintiff's legal arguments, the hearing officer sustained the revocation. The hearing officer concluded, as relevant here, that (1) the arresting officer had reasonable grounds to stop plaintiff for speeding and for weaving in and out of his traffic lane; (2) because plaintiff elected a breath test and the breathalyzer was working properly, plaintiff's decision not to provide a breath sample amounted to a refusal to take a chemical test; and (3) the Department made an initial determination of revocation and, therefore, had jurisdiction to hold a revocation hearing pursuant to section 42–2–126.

¶ 5 The district court affirmed the revocation on review, and this appeal followed.

## II. Standard of Review

■ ¶ 6 A reviewing court may reverse a revocation determination if the Department "exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record." § 42–2–126(9)(b), C.R.S.2011; *see Gilbert v. Julian*, 230 P.3d 1218, 1221 (Colo.App.2009). To determine that a hearing officer's decision was arbitrary and capricious under this statutory standard, a reviewing court must be convinced from the record as a whole that there was not substantial evidence to support

the decision. *Charnes v. Robinson*, 772 P.2d 62, 68 (Colo.1989).

■ ¶ 7 The credibility of witnesses, the weight to be given to the evidence, and the resolution of conflicting evidence are factual matters solely within the province of the hearing officer as the trier of fact. *See Baldwin v. Huber*, 223 P.3d 150, 152 (Colo.App. 2009); *see also Charnes v. Lobato*, 743 P.2d 27, 32–33 (Colo.1987). However, we review de novo agency determinations regarding questions of law. *See Meyer v. State*, 143 P.3d 1181, 1187 (Colo.App.2006). We are in the same position as the district court in reviewing the Department's action in the revocation proceedings based on the administrative record. *Baldwin*, 223 P.3d at 152.

## III. Department's Initial Determination and Statutory Authority

¶ 8 Plaintiff contends that the Department lacked statutory authority to proceed with the hearing, asserting that the Department failed to provide proof that it made an initial revocation determination as required by statute, and that there was insufficient information to support such a determination. We reject these arguments as unsupported by the record.

¶ 9 Under section 42–2–126(5)(a), C.R.S. 2011, a law enforcement officer having probable cause to believe that a person is subject to license revocation for refusal to take a chemical test is required to forward to the Department a completed express consent affidavit form, containing "information relevant to the legal issues and facts that shall be considered by the [D]epartment to determine whether the person's license should be revoked." Moreover, the Department *"may* specify any additional documents or copies of documents needed … to make its determination in addition to the affidavit." *Id.* (emphasis added).

■ ¶ 10 The Department acquires jurisdiction to make an initial revocation determination so long as the affidavit and other documents forwarded by the police officer contain sufficient information of a reliable character to permit the Department to make such a determination. *Duckett v. Tipton*, 826

P.2d 873, 874 (Colo.App.1992); *Alford v. Tipton,* 822 P.2d 513, 515 (Colo.App.1991).

¶ 11 Next, under section 42–2–126(6)(a), C.R.S.2011, upon its receipt of the express consent affidavit, the Department "shall determine whether the person's license should be revoked," and this initial determination "shall be based upon the information contained in the affidavit and the relevant documents submitted to the [D]epartment." Also, this determination "shall be final unless a hearing is requested and held." *Id.*

■ ¶ 12 We agree with plaintiff that, under the foregoing statutory provisions, before any hearing, the Department must make an initial revocation determination based on the information submitted to it by the law enforcement officer. *See Knaus v. Dep't of Revenue,* 844 P.2d 1318, 1320 (Colo.App.1992) (under similar provisions in former statutory scheme, Department was also required to make a preliminary revocation determination based on the documents submitted to it by the arresting officer); *see also Colo. Dep't of Revenue v. Hibbs,* 122 P.3d 999, 1005 (Colo. 2005) (stating that similar provisions in former statutory scheme were the "operative provision[s] for the Department's exercise of its revocation authority").

■ ¶ 13 We disagree, however, that the Department here did not make an initial determination as required by section 42–2–126(6), C.R.S.2011.

¶ 14 The arresting officer served plaintiff personally with the notice of revocation after his refusal to submit to the breath test, as required by section 42–2–126(5)(b)(I), C.R.S. 2011 ("A law enforcement officer, on behalf of the department, shall personally serve a notice of revocation on a person who is still available to the law enforcement officer if the law enforcement officer determines that, based on a refusal ..., the person's license is subject to revocation for ... refusal."). Thereafter, pursuant to section 42–2–126(5)(b)(III), C.R.S.2011, the law enforcement officer forwarded to the Department a copy of the completed notice of revocation form, a copy of plaintiff's driver's license that was taken into possession, the officer's affidavit, and other additional documents. Upon receipt of the documents, the Department determined that plaintiff's license should be revoked, as reflected by this entry made by the Department on plaintiff's driving record: "ECS [express consent] ARREST ADMIN CONVICTION."

■ ¶ 15 To the extent plaintiff argues that the Department was required to issue a separate notice of revocation, we disagree. Because the arresting officer served plaintiff personally with the notice of revocation, the Department was not required to issue a separate notice of revocation. *See* § 42–2–126(6)(b)(I), C.R.S.2011 ("If the department determines that the person is subject to license revocation, the department shall issue a notice of revocation *if a notice has not already been served upon the person by the law enforcement officer as provided in paragraph (b) of subsection (5) of this section.*" (emphasis added)); *cf.* § 42–2–126(6)(b)(I) & (II), C.R.S.2011 (if the driver was not personally served with the notice of revocation by the officer, the Department must send a notice of revocation to the driver's last known address).

■ ¶ 16 Furthermore, we are not aware of any statutory mandate, nor does plaintiff direct us to one, requiring the Department to support its preliminary determination with a formal record. Although the Department must base its preliminary determination on the affidavit and other documents, apart from issuing a formal notice to the licensee (if a notice has not already been served upon the licensee by the arresting officer), it need not justify the basis for revocation in an official writing. On the contrary, the proper remedy for a licensee unconvinced by the factual basis of a preliminary determination is to "make a written request for a review of the [D]epartment's determination at a hearing." § 42–2–126(7)(a), C.R.S.2011. In that event, as here, the licensee may present a case to overturn the revocation, requiring the Department to consider "all relevant evidence" and then affirm or reject its preliminary determination. *See* § 42–2–126(8)(c) & (f), C.R.S.2011. However, by its plain language, the express consent statute imposes no duty on the Department to support its

preliminary determination with formal findings.

¶ 17 And contrary to plaintiff's further argument, the Department had sufficient information to make that initial revocation determination from the documents submitted by the arresting officer. In this regard, we need not address whether the Department was limited to the information contained in the express consent affidavit in making this initial revocation determination, or whether it could also consider the information contained in the other documents submitted, because the information contained in the express consent affidavit was sufficient by itself.

¶ 18 Here, the express consent affidavit included a legal and factual basis upon which the Department could rely in rendering its initial determination to impose a revocation on plaintiff. It specified the location and time of driving and the following: plaintiff was speeding and weaving in and out of his traffic lane; upon the officer's contact with plaintiff, the officer detected the odor of alcohol on plaintiff's breath, and noticed that his eyes were bloodshot and glassy, that his speech was slow and slurred, and that his balance was unsteady; plaintiff unsatisfactorily completed roadside maneuvers; the express consent law was read or explained to plaintiff; and plaintiff elected to take a breath test, but then refused to take the test. This information was also sworn to be true by the arresting officer to the best of his knowledge and belief, under penalty of perjury. On this record, we conclude there was sufficient information of a reliable character in the express consent affidavit for the Department's initial revocation determination. *See Duckett,* 826 P.2d at 874–75; *Alford,* 822 P.2d at 515–16.

¶ 19 Thus, we are not persuaded by plaintiff's argument that the Department lacked statutory authority or jurisdiction to proceed with a revocation hearing under section 42–2–126(8), C.R.S.2011.

## IV. Refusal Issues

¶ 20 Plaintiff also contends that the hearing officer erred in determining that his conduct constituted a valid refusal to submit to testing. We perceive no error in the hearing officer's ruling on this issue.

### A. Extraordinary Circumstances and Operational Status of Breathalyzer

¶ 21 Plaintiff first argues that the hearing officer erred in determining that the breathalyzer was working properly and that there were no extraordinary circumstances that obligated the officer to direct plaintiff to take a blood test. We disagree.

¶ 22 Under the express consent statute, a law enforcement officer with probable cause to believe a driver has committed an alcohol-related driving offense may request that the driver select and complete either a blood test or a breath test. *See* § 42–4–1301.1(2)(a)(I), C.R.S.2011; *People v. Null,* 233 P.3d 670, 678 (Colo.2010).

¶ 23 The statute generally allows drivers to choose the method of testing. *See* § 42–4–1301.1(2)(a)(I), (II), C.R.S.2011; *see also Null,* 233 P.3d at 678. However, section 42–4–1301.1(2)(a.5), C.R.S.2011, contains an "extraordinary circumstances" exception to the general rule that drivers are entitled to their chosen form of test. Under this provision, if the requesting law enforcement officer determines that there are extraordinary circumstances preventing completion of the elected form of test within the required two-hour time period, "the officer shall inform the person of the extraordinary circumstances and request and direct the person to take and complete the other [form of] test." § 42–4–1301.1(2)(a.5)(I), C.R.S.2011.

¶ 24 The statute specifically identifies "malfunctioning breath test equipment" as an example of "extraordinary circumstances." § 42–4–1301.1(2)(a.5)(IV)(B), C.R.S.2011.

¶ 25 Whether the undisputed facts establish "extraordinary circumstances" under section 42–4–1301.1(2)(a.5) is a question of law. *See Turbyne v. People,* 151 P.3d 563, 572 (Colo.2007) (when controlling facts are undisputed, the legal effect of those facts constitutes a question of law); *Friends of Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs,* 80 P.3d 871, 882 (Colo.App.2003)

(reviewing de novo the application of facts to a statute).

¶ 26 Here, the evidence was undisputed that plaintiff elected to take a breath test; the breathalyzer initially indicated that it was not operating properly, but when the deputy restarted it, the breathalyzer printout indicated it was working properly and "had 96 more tests to perform before it actually needed solution"; after the restart of the breathalyzer, the deputy told plaintiff that it was working properly; and plaintiff refused to take the test because he did not believe that the machine was working properly. There was also unrebutted testimony that the deputy was certified to operate the breathalyzer. Plaintiff made no offer of proof contradicting the testimony of the arresting officer that the breathalyzer was working properly, and he did not subpoena the deputy who operated the breathalyzer.

¶ 27 Section 42–4–1301.1(2)(a.5)(I) specifically provides that the law enforcement officer, and not the licensee, determines whether there are extraordinary circumstances. Therefore, we conclude that a licensee cannot refuse to take a chemical test of breath or blood merely because he believes such testing equipment is unreliable or not working properly. *In re Ball*, 11 Kan.App.2d 216, 719 P.2d 750, 751–52 (1986) (refusal to take breath test based on the belief that breathalyzer machine was not working properly was unreasonable); *see Fugere v. State*, 120 N.M. 29, 897 P.2d 216, 222–23 (N.M.Ct. App.1995) (motorist cannot refuse to take a chemical test of breath or blood designated by law enforcement and as provided by statute merely because he believes such tests are unreliable); *In re Bardwell*, 83 Wis.2d 891, 266 N.W.2d 618, 622 (1978) (motorist was not entitled to refuse to take a breath test because he believed that the breath machine was unreliable). Thus, in the instant case, the proper way for plaintiff to have challenged the operability of the breathalyzer would have been for him to take the breath test and thereafter challenge any disparate results.

¶ 28 Nevertheless, plaintiff argues that the revocation cannot be sustained because the Department failed to introduce evidence regarding the "operational" status of the breathalyzer and evidence that it was working properly; that the process used for breath testing followed the rules and regulations prescribed by the state board of health; that the breathalyzer and the deputy operating it were timely certified; that the breathalyzer solution had not been used more than the allowed number of times; and that the solution had not expired.

¶ 29 Section 42–4–1301(6)(c), C.R.S.2011, which directs the court to take judicial notice of the methods of testing and the design and operation of the testing devices, provides as follows:

> In all actions, suits, and judicial proceedings in any court of this state concerning alcohol-related or drug-related traffic offenses, the court shall take judicial notice of methods of testing a person's alcohol or drug level and of the design and operation of devices, as certified by the department of public health and environment, for testing a person's blood, breath, saliva, or urine to determine such person's alcohol or drug level. The department of public health and environment may, by rule, determine that, because of the reliability of the results from certain devices, the collection or preservation of a second sample of a person's blood, saliva, or urine or the collection and preservation of a delayed breath alcohol specimen is not required. This paragraph (c) shall not prevent the necessity of establishing during a trial that the testing devices used were working properly and that such testing devices were properly operated. Nothing in this paragraph (c) shall preclude a [person] from offering evidence concerning the accuracy of testing devices.

¶ 30 Pursuant to this statute, the Department must show that the testing devices were in proper working order and were properly operated by a qualified person before admission of breath test results. *Thomas v. People*, 895 P.2d 1040, 1045 (Colo.1995). In addition, a licensee at a revocation hearing must be given the opportunity to contest the results of testing performed at the request of the arresting officer. *Nefzger v. Colo. Dep't*

*of Revenue,* 739 P.2d 224, 229 (Colo.1987); *Gilbert,* 230 P.3d at 1222.

¶ 31 Here, because plaintiff refused testing, there was no testing device, there was no method of testing, and there were no test results, as contemplated by section 42–4–1301(6)(c). Accordingly, section 42–4–1301(6)(c) is not applicable here. Once plaintiff refused to take the breath test after the deputy informed him that the breathalyzer was functioning properly, the operability of the breathalyzer was not at issue.

¶ 32 In any event, plaintiff could have offered, but did not offer, evidence concerning the functionality of the breathalyzer by requesting the Department to issue subpoenas for documents concerning its functionality at the time of plaintiff's arrest. *See Gilbert,* 230 P.3d at 1222 (the Department has the statutory authority to issue subpoenas at a plaintiff's request, including subpoenas duces tecum); *see also* §§ 24–4–105(4)–(5), 42–2–126(8)(d), C.R.S.2011; *Colo. Dep't of Revenue v. Kirke,* 743 P.2d 16, 21–22 (Colo.1987) (a plaintiff's right to request the issuance of subpoenas to support a defense is a significant factor in avoiding a due process violation when a revocation element is established solely by hearsay evidence). Nor did plaintiff exercise his statutory right to require the attendance of the deputy who operated the breathalyzer. *See* §§ 24–4–105(4)–(5), 42–2–126(7)(d)–(f), (8)(d), C.R.S.2011; *see also Kirke,* 743 P.2d at 21; *Herman v. Dep't of Revenue,* 870 P.2d 628, 629–30 (Colo.App. 1994). Because plaintiff failed to exercise his statutory rights, his appellate challenges are unpersuasive. *See Herman,* 870 P.2d at 629–30.

¶ 33 Finally, plaintiff argues that the officer's testimony regarding the "alleged" breathalyzer printout indicating that the breathalyzer was working properly constituted hearsay. Assuming, without deciding, this testimony was hearsay and should not have been admitted at the hearing, we conclude that the error was of no significance in light of our conclusion that the operability of the breathalyzer was not at issue because plaintiff refused to submit to testing.

¶ 34 Crediting the unrebutted testimony of the arresting officer, the hearing officer found that the breathalyzer was working properly after it had been restarted, and, accordingly, there were no extraordinary circumstances requiring the officer to offer plaintiff the option to take a blood test. Because the hearing officer's factual finding was based on unrebutted evidence and inferences on this issue, this finding is binding on judicial review. *See Halter v. Dep't of Revenue,* 857 P.2d 535, 537 (Colo.App.1993).

## B. Express Consent Advisement

¶ 35 Plaintiff also contends that the hearing officer erred in determining that he was properly advised under the express consent statute. We disagree.

¶ 36 First, plaintiff argues that, because the breathalyzer initially malfunctioned, the deputy's advisement that he did not have to take the breath test, but that failure to take the test would be considered a refusal, was improper and confusing. We are not persuaded.

¶ 37 As stated above, there was unrebutted testimony that the breathalyzer was working properly. Therefore, the deputy's explanation was correct: plaintiff did not have to take the breath test, but because he had elected initially to take a breath test and because there were no extraordinary circumstances preventing completion of that test, if he did not take the test, it would constitute refusal. Furthermore, the record supports the hearing officer's determination that plaintiff understood that he had a choice of tests; that once he chose a breath test, he was obligated to take such a test; and that failure to take the breath test would constitute refusal. Indeed, at the hearing, plaintiff did not testify that he was confused by the arresting officer's or the deputy's explanations of the express consent law.

¶ 38 Second, plaintiff argues that the officer was required to advise him, pursuant to section 42–4–1301.1(4), C.R.S.2011, that if he refused to submit to testing, his commercial driver's license (CDL) would also be revoked. We disagree that plaintiff was entitled to such notification: "[T]here is no constitutional or statutory requirement that a

driver who is asked to submit to a chemical test for blood [or breath] alcohol content be informed ... of the legal consequences that will attend refusal to submit to any tests." *Brewer v. Motor Vehicle Div.*, 720 P.2d 564, 570 (Colo.1986); *see Dikeman v. Charnes*, 739 P.2d 870, 872 (Colo.App.1987) (under the current statutory scheme, a licensee is presumed to know the law regarding operation of motor vehicles, including consequences of refusing a request for chemical testing).

¶ 39 In addition, section 42–4–1301.1(4) provides:

> *Any driver of a commercial motor vehicle* requested to submit to a test as provided in paragraph (a) or (b) of subsection (2) of this section shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test shall result in an out-of-service order as defined under section 42–2–402(8) for a period of twenty-four hours and a revocation of the privilege to operate a commercial motor vehicle for one year as provided under section 42–2–126.

(Emphasis added.)

¶ 40 Here, it is undisputed that plaintiff was driving a private passenger vehicle, and not a commercial vehicle, at the time of the traffic stop. Therefore, section 42–4–1301.1(4) is inapplicable, and the arresting officer was not required to advise plaintiff that his CDL would be revoked if he refused to submit to testing.

### C.  Conclusion

¶ 41 We conclude that because substantial evidence in the record as a whole supports the hearing officer's ultimate finding that plaintiff refused to submit to testing as required by the express consent statute, this determination may not be disturbed on review. *See* § 42–2–126(9)(b); *Robinson*, 772 P.2d at 68–69 (upholding revocation under substantial evidence standard of review despite improprieties in hearing officer's ruling); *Brodak v. Visconti*, 165 P.3d 896, 900 (Colo.App.2007) (same).

### V.  Validity of Traffic Stop

¶ 42 Last, plaintiff contends that there was no probable cause for the initial traffic stop. We reject this contention.

¶ 43 Initially, we note that different divisions of this court have reached different conclusions as to whether the legality of an initial motor vehicle stop may properly be raised as a defense in driver's license revocation proceedings. *Compare Francen v. Colo. Dep't of Revenue*, 2012 COA 110, ¶ 28, —— P.3d ——, 2012 WL 2581029 (the plain language of the relevant statutes does not require, or even allow, a hearing officer or an appellate court to determine the lawfulness of the initial contact in a revocation proceeding under section 42–2–126), *and Fallon v. Colo. Dep't of Revenue*, 250 P.3d 691, 695 (Colo.App.2010) ("whether a licensee in a revocation hearing may properly argue that his stop and arrest were not supported by reasonable suspicion and probable cause and that evidence resulting from them should, therefore, be excluded" is an "open question"), *with Baldwin*, 223 P.3d at 152 (licensee may properly raise issues concerning legality of initial investigatory stop), *and Peterson v. Tipton*, 833 P.2d 830, 831 (Colo.App.1992) (although the legality of the initial traffic stop and subsequent arrest are not necessary elements in revocation proceedings that the Department must prove, "a driver may properly raise such issues as a defense in such ... proceedings"). We need not, however, resolve this issue, because we otherwise perceive no error in the Department's ruling.

¶ 44 Here, the testimony and written report of the arresting officer established that he observed plaintiff speeding and weaving in and out of his traffic lane, and that upon contacting plaintiff, he detected various indications of intoxication.

¶ 45 First, plaintiff argues that weaving "does not provide probable cause for a stop." Plaintiff does not dispute that his vehicle was in fact weaving. Contrary to plaintiff's assertion, the case law is clear that when, as here, a police officer has a reasonable suspicion from his observations that a driver has committed the traffic violation of weaving, an investigatory stop is constitu-

tionally justified on that basis. *See Baldwin,* 223 P.3d at 152 (if the licensee is seen actually committing the traffic violation of weaving, the initial stop is justified under the reasonable suspicion standard on that basis); *see also People v. Ramos,* 13 P.3d 295, 299 (Colo. 2000).

¶ 46 Second, plaintiff argues that there was no probable cause for the stop based on speeding because (1) the summons and complaint did not allege that his speed exceeded the reasonable and prudent speed as required by section 42–4–1101(5), C.R.S., 2011; (2) the officer's pacing procedure was not performed properly; and (3) there was no evidence that the patrol car's speedometer had been calibrated. Again, we disagree.

¶ 47 Here, the summons and complaint specified that plaintiff was traveling thirty-four miles per hour in a posted twenty-five mile-per-hour zone. Thus, contrary to plaintiff's contention, the summons and complaint specified the "reasonable and prudent speed applicable at the specific time and location of the alleged violation." *See* § 42–4–1101(5); *see also* § 42–4–1101(4), C.R.S. 2011 (any speed in excess of the posted speed limit "shall be prima facie evidence that such speed was not reasonable or prudent").

¶ 48 Furthermore, a police officer's visual observation that a person is driving in excess of the speed limit provides a legitimate ground—that is, an objective factual basis—for making an investigatory stop. *See People v. Sosbe,* 789 P.2d 1113, 1115 (Colo. 1990); *see also People v. Walker,* 199 Colo. 475, 477 n. 3, 610 P.2d 496, 498 (1980) (while the officer's observation that the defendant was speeding was "not helpful in determining whether the defendant was speeding 20 mph over the speed limit," it was "probative of the fact that the defendant was exceeding the speed limit").

¶ 49 Therefore, even assuming that the officer's pacing procedure was faulty or that the speedometer on the patrol car had not been calibrated, we conclude that the officer's visual observations of plaintiff's speed, standing alone, provided a specific and articulable basis for suspecting that plaintiff was committing a violation. *See Sosbe,* 789 P.2d at 1115.

¶ 50 We therefore conclude that the evidence was sufficient to support the hearing officer's conclusions that there was reasonable suspicion to justify the initial traffic stop. *See Nefzger,* 739 P.2d at 229; *Baldwin,* 223 P.3d at 152.

¶ 51 The judgment is affirmed.

Judge TERRY and Judge FOX concur.