The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA29

**No. 18CA1230, *Neppl v. Dep't of Revenue* — Regulation of
Vehicles and Traffic — Alcohol and Drug Offenses — Expressed
Consent for the Taking of Blood, Breath, Urine, or Saliva**

In this driver's license revocation appeal, a division of the
court of appeals holds, as a matter of first impression, that the
express consent statute, section 42-4-1301.1(6), C.R.S. 2018, does
not require a paramedic who draws a blood sample to be directly
supervised by a doctor at the time of the draw.  The division further
concludes, consistent with *People v. Mari*, 187 Colo. 85, 528 P.2d
917 (1979), that the words "under supervision" do not require on-
the-spot supervision.  The revocation is affirmed.

COLORADO COURT OF APPEALS						**2019COA29**

Court of Appeals No. 18CA1230
Weld County District Court No. 18CV30116
Honorable Marcelo A. Kopcow, Judge

Daniel Earl Neppl,

Plaintiff-Appellant,

v.

Colorado Department of Revenue,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE FREYRE
Webb and Román, JJ., concur

Announced February 21, 2019

Fife Luneau, P.C., Charles L. Fife, Daniel Luneau, Denver, Colorado, for
Plaintiff-Appellant

Philip J. Weiser, Attorney General, Laurie Rottersman, Senior Assistant
Attorney General, Denver, Colorado, for Defendant-Appellee

¶ 1      Plaintiff, Daniel Earl Neppl, appeals the district court's judgment affirming the revocation of his driver's license by the Colorado Department of Revenue (Department).  The Department revoked Neppl's license based on a test result showing that he had a legally excessive blood alcohol content (BAC).

¶ 2      Neppl contends that the test result was inadmissible because the paramedic who drew his blood did not have a supervisor physically present.  He asks us to interpret the words "under the supervision" in the express consent statute, section 42-4-1301.1(6), C.R.S. 2018, to require on-the-spot supervision — an issue of first impression.  We reject his contention for two reasons.  First, we hold that the plain language does not require a doctor's supervision of a paramedic.  Second, even assuming it did, we conclude that, consistent with our supreme court's interpretation of the same language in a prior version of Colorado's driving under the influence/implied consent statute, "under the supervision" is not synonymous with "on-the-spot" supervision.  For these reasons, we affirm the judgment.

## I.  Background

¶ 3     The hearing officer made the following record-supported findings.

¶ 4     A police officer stopped Neppl's vehicle after Neppl twice failed to use his turn signal. On contacting Neppl, the officer noticed several indicia of alcohol intoxication, and Neppl admitted to drinking four beers. After Neppl failed to satisfactorily perform voluntary roadside maneuvers, the officer advised him of his options under the express consent law. Neppl chose a blood test. That test showed that he had a BAC of .188 grams of alcohol per 100 milliliters of blood.

¶ 5     After receiving the test results, the officer issued Neppl a notice of revocation. *See* § 42-2-126(3)(a), C.R.S. 2018 (requiring the Department to revoke a person's license for a BAC in excess of 0.08). Neppl requested a hearing. As pertinent here, Neppl argued at the hearing that the paramedic who drew his blood was not authorized to do so because the doctor who supervised the paramedic was not present at the time of the blood draw. The hearing officer rejected Neppl's argument and concluded that the person performing the blood draw was "either a paramedic or emergency medical technician" and was therefore "qualified" to

2

withdraw the blood without any direct supervision by a doctor or nurse. Consequently, the hearing officer sustained the revocation.

¶ 6 Neppl then commenced this review action in the district court. He again argued, among other things, that the paramedic was not authorized to perform the blood draw without direct doctor supervision. The district court disagreed. It concluded that under the applicable statute and regulations, paramedics need not be supervised to perform blood draws and that, even if supervision was necessary, nothing required direct supervision at the time of the blood draw. The court also concluded that any technical noncompliance associated with the blood draw would go to its weight and not its admissibility. Accordingly, the court affirmed the Department's revocation of Neppl's license.

## II. Discussion

¶ 7 Neppl's contentions provide no basis for reversing the district court's judgment or the underlying revocation order.

## A. Standard of Review

¶ 8 Section 42-2-126(9)(b) governs judicial review of the Department's driver's license revocation orders. Under that statute, a reviewing court may reverse the Department's determination if it

(1) exceeded its constitutional or statutory authority; (2) erroneously interpreted the law; (3) acted in an arbitrary and capricious manner; or (4) made a determination that is unsupported by the evidence in the record. *See Hanson v. Colo. Dep't of Revenue*, 2012 COA 143, ¶ 13, *aff'd*, 2014 CO 55.

¶ 9 A reviewing court may not disturb a hearing officer's factual findings unless they are "clearly erroneous on the whole record." § 24-4-106(7)(b)(VII), C.R.S. 2018 (made applicable through section 42-2-126(11)). The credibility of witnesses, the weight to be afforded the evidence, and the resolution of conflicting evidence are factual matters solely within the hearing officer's province as the trier of fact. *Long v. Colo. Dep't of Revenue*, 2012 COA 130, ¶ 6. However, courts review de novo agency determinations regarding questions of law. *Id.* at ¶ 7.

¶ 10 We occupy the same position as the district court when reviewing the Department's actions. *See Haney v. Colo. Dep't of Revenue*, 2015 COA 125, ¶ 14.

B. The Paramedic's Authority to Draw Blood

¶ 11 Neppl's argument that the statute requires on-the-spot supervision requires us to interpret section 42-4-1301.1(6). "Our

4

objective when interpreting a statute is to effectuate the intent and purpose of the General Assembly." *Zelenoy v. Colo. Dep't of Revenue*, 192 P.3d 538, 541 (Colo. App. 2008). To achieve this objective, we begin with the statute's express language, and if that language is clear and unambiguous, we must apply its plain and ordinary meaning. *See id.*

¶ 12    Section 42-4-1301.1(6) is part of the express consent statute. It provides, in relevant part, as follows:

> No person except a physician, a registered nurse, a paramedic, as certified in part 2 of article 3.5 of title 25, C.R.S., an emergency medical service provider, as defined in part 1 of article 3.5 of title 25, C.R.S., or a person whose normal duties include withdrawing blood samples under the supervision of a physician or registered nurse shall withdraw blood to determine the alcoholic or drug content of the blood for purposes of this section.

§ 42-4-1301.1(6)(a).

¶ 13    Neppl relies on a blood draw form that the paramedic completed. In that form, the paramedic initialed the following statement: "I draw blood samples regularly in the course of my duties for Mountain View Fire Rescue. I am supervised by Mountain View Fire Rescue Medical Director, Adam J. Rush, MD."

He argues this statement means that the paramedic had to be supervised by Dr. Rush while conducting any blood draw and that, because Dr. Rush was not present and supervising the blood draw here, section 42-4-1301.1(6)(a) was violated. We disagree with this argument for two reasons.

¶ 14　First, under section 42-4-1301.1(6)(a)'s plain language, a paramedic need not be supervised by a physician or nurse to withdraw blood. The statute describes five categories of individuals — (1) physicians; (2) registered nurses; (3) paramedics; (4) emergency medical service providers; and (5) other persons "whose normal duties include withdrawing blood samples." *Id.* By the statute's plain terms, only the last category of individuals must be under the supervision of a physician or registered nurse. As the hearing officer noted, construing the statute to require paramedics to be supervised would also require physicians and nurses to be supervised, an absurd or unreasonable result. *See People v. Ramirez,* 2018 COA 129, ¶ 52 (courts will not follow a statutory construction that leads to an unreasonable or absurd result).

¶ 15　Neppl also argues that nothing in the record shows that the paramedic was "certified" under Title 25. However, this factual

issue is not properly before us because Neppl failed to raise it in the administrative proceedings. *See Tate v. Colo. Dep't of Revenue*, 155 P.3d 643, 647 (Colo. App. 2007); *see also Hancock v. State*, 758 P.2d 1372, 1376 (Colo. 1988) (review of agency action is limited to the record before the agency); *Poe v. Dep't of Revenue*, 859 P.2d 906, 909 (Colo. App. 1993) (same).

¶ 16    Second, even if we were to conclude that a paramedic needs to be supervised by a physician, the record establishes that he was supervised by Dr. Rush. Contrary to Neppl's assertion, nothing in section 42-4-1301.1(6)(a), or the blood draw form on which he relies, required Dr. Rush to be physically present and supervising each blood draw.

¶ 17    In *People v. Mari*, 187 Colo. 85, 528 P.2d 917 (1974), the supreme court rejected a similar argument based on a prior version of Colorado's driving under the influence/implied consent statute. That statute provided that "no person except a physician, registered nurse, or a person whose normal duties include withdrawing blood samples under the supervision of a physician or registered nurse shall be entitled to withdraw blood." § 13-5-30(3)(b), C.R.S. 1967. The defendant argued that because the medical technologist who

performed the blood draw in that case "was not, at the moment she withdrew defendant's blood, acting under the supervision of a doctor or registered nurse, she did not come within the class of persons qualified by the statute to withdraw blood." *Mari*, 187 Colo. at 87, 528 P.2d at 919. The court disagreed:

> We do not read the statute to require on-the-spot supervision; on the contrary, if [the person's] normal duties as a medical technologist include withdrawing blood samples while she is under the supervision of a physician or registered nurse, she qualifies notwithstanding the fact that supervision was not present at this time. We read the 'under supervision' clause as referring to any 'normal duties' and not as a requirement that the supervision be present at the time the technician withdraws the blood.

*Id.*

¶ 18     Consistent with *Mari*'s reasoning, we conclude that the paramedic was authorized to draw Neppl's blood, and that the statute does not require a supervisor to be physically present for a blood draw. We further note that, even if the blood draw had not strictly comported with the statutory or regulatory requirements, such deficiency would have merely impacted the weight to be afforded the test results, not its admissibility. *See Dye v. Charnes*,

8

757 P.2d 1162, 1163 (Colo. App. 1988) (failure to establish whether nurse met criteria in regulations went to weight, rather than admissibility, of blood test results in driver's license revocation proceeding); *see also Siddall v. Dep't of Revenue*, 843 P.2d 85, 87 (Colo. App. 1992) (any deficiency in evidence as to whether blood test kit complied with applicable regulatory requirements went to weight given to results, not their admissibility).

¶ 19    Neppl also argues that the district court erred in applying both section 42-4-1301(6)(f), C.R.S. 2018, which pertains to the admissibility of chemical tests in driving under the influence proceedings, and certain Colorado Department of Public Health and Environment regulations describing the persons authorized to collect blood specimens.  He reasons that these provisions do not apply here because he only challenged the blood draw under section 42-4-1301.1(6)(a), which is "separate and apart" from any regulatory requirements.  We need not address this argument, however, because (1) we have already concluded that the paramedic's blood draw was authorized under section 42-4-1301.1(6)(a); and (2) the district court's analysis is not necessarily

9

controlling or relevant since we occupy the same position as it when reviewing the Department's actions.  *See Haney*, ¶ 14.

## C.  Neppl's Consent

¶ 20    Neppl last contends that he did not voluntarily consent to the blood draw because his consent "was premised on the belief that a legally authorized person would be performing his blood draw."  But at the administrative revocation hearing, Neppl never argued that he did not voluntarily consent to the blood draw.  Because he raised this issue for the first time on appellate review, we decline to address it.  *See Tate*, 155 P.3d at 647.  In any event, even if we were to assume the record somehow showed that Neppl's consent was conditioned on the blood draw being performed by a legally authorized person, we have upheld the hearing officer's determination that the paramedic was so authorized.

## III.  Conclusion

¶ 21    The district court's judgment is affirmed.

JUDGE WEBB and JUDGE ROMÁN concur.

10