24CA0825 McCallum v CDOT 03-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0825
City and County of Denver District Court No. 22CV32310
Honorable Jill D. Dorancy, Judge

Bryce McCallum and Patty McCallum,

Plaintiffs-Appellants,

v.

Colorado Department of Transportation,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

Steven A. Gall, P.C., Steven A. Gall, Hot Sulphur Springs, Colorado, for
Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Barbara J. Stauch, Senior Assistant
Attorney General, Pawan Nelson, Senior Assistant Attorney General, Denver,
Colorado, for Defendant-Appellee

¶ 1    Plaintiffs, Bryce and Patty McCallum, appeal the district court's judgment affirming a final agency decision in favor of defendant, the Colorado Department of Transportation (CDOT).  We affirm.

## I.    Background

¶ 2    The McCallums and the Deweys (who aren't parties to this appeal) own adjoining properties in Grand County.  The Deweys' property abuts U.S. Highway 34.  Since 1961, the McCallums' property has benefitted from an easement (the historical easement) over the Deweys' property to access the highway, depicted below.



Map of Historical Easement and Highway Access

¶ 3     In August 2019, shortly after the Deweys bought their property, they agreed to lease it to Beacon Landing, a local marina. Beacon Landing then applied for a special use permit from the Grand County Board of County Commissioners (BOCC) to use the Deweys' property for commercial boat storage. The BOCC approved Beacon Landing's application on the condition that the Deweys obtain a state highway access permit from CDOT. *See* § 43-2-147(5)(a), C.R.S. 2024 ("[P]roviding vehicular access to or from any state highway from or to property adjoining a state highway" requires an access permit.).

¶ 4     The Deweys applied for the highway access permit. CDOT determined that the Deweys' property was allowed only one highway access point and that the original access point — located at the east end of the historical easement — needed to be relocated approximately one hundred twenty feet to the southwest for safety reasons so that the new access point would align with an existing access point directly across the highway. To ensure the McCallums maintained highway access, CDOT required the Deweys to grant the McCallums an easement connecting the historical easement to the new highway access point.

¶ 5     The Deweys complied with CDOT's requirement by granting the McCallums two easements (the new easements).[1]  CDOT then issued the highway access permit, directing the Deweys to construct the new access point and close the original one.  The BOCC issued Beacon Landing's special use permit the following month.  As discussed in more detail below, the special use permit specifically referenced the highway access permit.

¶ 6     The Deweys finished relocating the highway access point in December 2020, as depicted below.  Since then, the McCallums have used the new access point and the new easements for ingress and egress to and from their property.

---

[1] The Deweys granted the McCallums a second easement because CDOT determined that the first one didn't extend far enough to meet the new highway access point.



Map of New Easements and Access Points

¶ 7     The McCallums vehemently opposed the relocation of the highway access point because it made accessing their property more difficult: Closing the original highway access point meant they could no longer turn directly onto the historical easement from the highway.  They appealed CDOT's decision to "destroy their access" and requested a hearing by the Transportation Commission, which referred the matter to an administrative law judge (ALJ).  Following a four-day hearing, the ALJ issued a final agency decision upholding the relocation of the highway access point.

¶ 8    The McCallums appealed to the district court, *see* § 24-4-106(4), C.R.S. 2024, which affirmed the ALJ's decision.

## II.    Discussion

¶ 9    The McCallums raise four arguments for reversal on appeal: (1) CDOT lacked statutory authority to relocate the highway access point; (2) CDOT failed to ensure the McCallums maintained reasonable highway access; (3) CDOT's failure to obtain the BOCC's written concurrence and judicial approval for the change violated Colorado law; and (4) the McCallums were denied due process under the Colorado and United States Constitutions and their rights under the State Administrative Procedure Act (APA), §§ 24-4-101 to -109, C.R.S. 2024, because CDOT didn't afford them a pre-relocation hearing.  We address and reject each of these contentions in turn.

### A.    Standard of Review and Applicable Law

¶ 10    We review a final agency decision de novo, standing in the same position as the district court.  *Martelon v. Colo. Dep't of Health Care Pol'y & Fin.*, 124 P.3d 914, 916 (Colo. App. 2005).  We will reverse only if the final agency decision is "arbitrary or capricious, in excess of statutory authority, not in accord with the procedures

or procedural limitations of the APA or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, unsupported by substantial evidence, or otherwise contrary to law." *HCA-HealthONE LLC v. Colo. Dep't of Lab. & Emp.*, 2020 COA 52, ¶ 28 (citing § 24-4-106(7)(b)).

¶ 11     "In applying this standard, we presume the validity and regularity of administrative proceedings and resolve all reasonable doubts as to the correctness of administrative rulings in favor of the agency." *Gessler v. Grossman*, 2015 COA 62, ¶ 11, *aff'd sub nom. Gessler v. Smith*, 2018 CO 48; *see also Coffman v. Colo. Common Cause*, 102 P.3d 999, 1005 (Colo. 2004) (we defer to an agency's reasonable interpretation of its own regulations).  And we won't disturb a hearing officer's factual findings unless they're clearly erroneous.  *Neppl v. Colo. Dep't of Revenue*, 2019 COA 29, ¶ 9; *see* § 24-4-106(7)(b)(VII).  "The credibility of witnesses, the weight to be afforded the evidence, and the resolution of conflicting evidence are factual matters solely within the hearing officer's province as the trier of fact."  *Neppl*, ¶ 9 (citing *Long v. Colo. Dep't of Revenue*, 2012 COA 130, ¶ 7).

### B. Analysis

#### 1. CDOT's Authority to Regulate Highway Access

¶ 12    Throughout their opening brief, the McCallums repeatedly assert that CDOT lacked statutory authority to relocate the highway access point.[2] As we understand their argument, the McCallums contend that CDOT's authority to regulate highway access under section 43-2-147 didn't extend to closing the original access point in this case because doing so interfered with the historical easement, which, given its grandfathered status, fell outside CDOT's ambit. *See* § 43-2-147(6)(a) ("The provisions of this section shall not apply to driveways in existence on June 30, 1979, unless specifically stated otherwise."); *see also* Dep't of Transp. Reg.

---

[2] The McCallums also argue that CDOT lacked authority to direct the Deweys to grant them the new easements. They assert that the ALJ erroneously determined that "per [section 43-2-147(1), C.R.S. 2024], CDOT can regulate access which included [the] Deweys' imposition of their easements upon [the] McCallums." But the ALJ never made such a determination, and the McCallums don't point us to any authority that addresses this issue. *See Castillo v. Koppes-Conway*, 148 P.3d 289, 291-92 (Colo. App. 2006) (failure to set forth a cogent argument with proper citations to authority and the record precludes appellate review). In any event, it appears the McCallums' muddled discussion on this issue pertains largely to the new easements' alleged invalidity and the Deweys' alleged wrongdoing. As discussed below, we can't address these matters because the Deweys aren't parties to this appeal.

1.5(41), 2 Code Colo. Regs. 601-1 ("'Grandfathered' means a condition that existed prior to June 21, 1979 when [section 43-2-147] was first signed into law . . . .").

¶ 13     A division of this court rejected the McCallums' argument in *McCallum v. Dewey*, (Colo. App. No. 23CA2004, June 27, 2024) (not published pursuant to C.A.R. 35(e)):

> Under section 43-2-147(1)(a), CDOT is authorized to regulate vehicular access to public highways "in order to protect the public health, safety, and welfare." And under section 43-2-147(6)(b), CDOT can require a driveway to be reconstructed to comply with the highway access code if the driveway is connected to a highway's access points. *See* Dep't of Transp. Reg. 1.5(33), 2 Code Colo. Regs. 601-1 (defining "Driveway" to mean "an access that is not a public street, road, or highway"). CDOT thus had the authority to regulate the access point and driveway — which included the historical easement.

*Id.*, slip op. at ¶ 11.[3]

¶ 14      We agree with the division's reasoning. Section 43-2-147(6)(b) expressly provides that "[a]ny driveway, *whether constructed before, on, or after June 30, 1979,* may be required by the department of transportation . . . to be reconstructed or relocated to conform to the access code . . . ." (Emphasis added.) We therefore reject the McCallums' argument that CDOT lacked authority under section 43-2-147 to close the original access point.

### 2.      Reasonable Highway Access

¶ 15      The McCallums next contend that CDOT failed to ensure that they maintained reasonable highway access. We disagree.

---

[3] CDOT wasn't a party in *McCallum v. Dewey*, (Colo. App. No. 23CA2004, June 27, 2024) (not published pursuant to C.A.R. 35(e)). In that case, a division of this court reviewed the district court's order granting summary judgment against the McCallums on their wrongful interference claim against the Deweys. The McCallums had asked for damages and "the restoration of the historical easement including the historical easement access point." *Id.*, slip op. at ¶ 10. As to damages, the division concluded that summary judgment was improper. *Id.* at ¶¶ 14-16. But the division determined that the McCallums couldn't reinstate the historical access point through their wrongful interference claim against the Deweys because CDOT had the authority to regulate the access point. *Id.* at ¶ 11.

9

¶ 16 The State Highway Access Code, *see* Dep't of Transp. Reg. 1.2(7), 2 Code Colo. Regs. 601-1 (enacted pursuant to section 43-2-147(4)), directs CDOT to "work closely with property owners and local governments to provide reasonable access to the general street system that is safe" and "enhances the movement of traffic." *See also* Dep't of Transp. Reg. 1.2(3), 2 Code Colo. Regs. 601-1 (CDOT must "consider its impacts on public and private land use decisions" because "[p]roperty owners have the right of reasonable access to the general street system."). The Access Code also encourages "beneficial modifications to existing developed property." *Id.* at Reg. 2.6(2). Where significant modifications to property abutting a state highway are proposed, CDOT must determine "the best overall solution to access and circulation patterns." *Id.* at Reg. 1.2(6).

¶ 17 The ALJ found that CDOT's decision to relocate the highway access point complied with these regulations. He credited the testimony from Mr. Bunnell, CDOT's traffic and safety engineer, and Mr. Killian, CDOT's regional access manager, that (1) CDOT's best practice is to manage highway access in a way that minimizes accidents; (2) the Deweys' property was allowed only one highway

access point; (3) because the Deweys' proposed land use would increase vehicular traffic from the highway onto the Deweys' property, the safest approach was to relocate the original access point, so that the new one would align with an existing access point directly across the highway; (4) this approach minimizes accidents by allowing two vehicles to turn left simultaneously at the intersection; (5) to ensure the McCallums' right to reasonably access the highway from their property, CDOT required the Deweys to grant the McCallums an easement connecting the new access point to the historical easement; and (6) the new easements the Deweys granted the McCallums include a curvature that allows large vehicles to turn onto the historical easement. Although the McCallums testified that large emergency vehicles had difficulty navigating the turn, the ALJ found that the McCallums themselves had caused this difficulty by unilaterally installing a fence with gate posts on the Deweys' property and that removing the fence would allow additional room to navigate the turn. The McCallums also testified that the new easements created a "muddy mess" in the spring and increased snow plowing costs in the winter, but the ALJ found that CDOT's public health and safety concerns outweighed

these considerations and justified the relocation. The evidence is more than sufficient to support the ALJ's findings.

¶ 18 We aren't persuaded by the McCallums' argument that they don't have reasonable highway access because the new easements are terminable. As things stand, the McCallums can access the highway from the historical easement using the new easements, which the Deweys granted the McCallums with "non-exclusive, perpetual access." If future owners of the McCallums' property run into problems using the new easements, they may bring a quiet title action against the Deweys in a separate judicial proceeding. Indeed, we can't address property rights concerning the new easements because the Deweys aren't parties to this appeal. *See Keith v. Kinney*, 961 P.2d 516, 518 (Colo. App. 1997) (in a quiet title action, anyone with a claim to the property, or a material interest that might be affected by the judgment, is a necessary party).[4]

---

[4] In addition to wrongful interference, the McCallums sued the Deweys for a declaratory judgment that the new easements are void. *McCallum*, No. 23CA2004, slip op. at ¶ 5. The division reversed the district court's order granting summary judgment against the McCallums on this claim, *id.* at ¶¶ 19-21, which is scheduled for a jury trial in July 2025.

### 3. Written Concurrence and Judicial Approval

¶ 19    The McCallums next contend that CDOT acted unlawfully because it didn't obtain the BOCC's written concurrence and judicial approval before it relocated the highway access point. Again, we disagree.

¶ 20    As discussed, section 43-2-147(6)(b) authorized CDOT's actions in this case. That section provides, in relevant part, that "[a]ny driveway . . . may be required by the department of transportation *with written concurrence of the appropriate local authority* to be reconstructed or relocated to conform to the access code." *Id.* (Emphasis added.) The parties agree that the BOCC was the "appropriate local authority" under section 43-2-147(6)(b).

¶ 21    The McCallums argue that the written concurrence requirement wasn't met because the BOCC didn't give CDOT a written agreement specifically assenting to the relocation of their driveway. But the record conclusively shows that the BOCC agreed with CDOT's decision to relocate the highway access point. The BOCC approved Beacon Landing's application for a special use permit on the condition that the Deweys obtain a highway access permit from CDOT. After the Deweys obtained the highway access

permit detailing CDOT's terms and design plans, the BOCC issued

Beacon Landing's special use permit, which specifically referenced

the highway access permit:

> WHEREAS, the conditions of approval have
> been met and a copy of the State Highway
> Access Permit No. 320066 granted by Colorado
> Department of Transportation is incorporated
> by reference herein and attached as Exhibit
> "A".

¶ 22      This satisfied the written concurrence requirement. *See* Dep't

of Transp. Reg. 2.14(1), 2 Code Colo. Regs. 601-1 ("Written

concurrence by the appropriate local authority *in the design plans*

*illustrating access changes* or by correspondence will constitute

concurrence pursuant to section 43-2-147(6)(b) . . . .") (emphasis

added).

¶ 23      The McCallums also argue that CDOT needed to obtain a court

order authorizing the relocation because they didn't consent to it.

In support of their argument, they rely on *Roaring Fork Club, L.P. v.*

*St. Jude's Co.*, 36 P.3d 1229 (Colo. 2001).

¶ 24      We agree with the ALJ's determination that *Roaring Fork* is

distinguishable.  In that case, the owner of property burdened by an

irrigation ditch easement unreasonably interfered with the

14

benefitted estate owner's use of the easement because it had "destroyed ditch banks and portions of ditches, realigned ditch channels, diverted ditch water flows, piped portions of ditches, constructed cabins and golf course greens within the easements, and temporarily piped wastewater into one of the ditches." *Id.* at 1230. On appeal, the Colorado Supreme Court began its analysis by emphasizing the importance of ditches in Colorado and explaining how the rights attendant to ditch easements are greater than and distinct from those of other types of easements. *Id.* at 1231-32. The court "approach[ed] the issues . . . with due regard for the importance of ditches and ditch rights under the law," *id.* at 1232, and held that the unilateral alteration of an irrigation ditch easement, made without the easement holder's consent or a court order authorizing the alteration, constitutes trespass. *Id.* at 1231.

¶ 25     Because the historical easement over the Deweys' property — a driveway — is nothing like the ditch easement at issue in *Roaring Fork,* we aren't convinced that the holding in that case applies to the circumstances before us. And the McCallums don't point us to anything in section 43-2-147 or the Access Code, or to any other authority, that would have required CDOT to obtain either their

consent or judicial approval before relocating the highway access point.

### 4. Due Process

¶ 26    Lastly, the McCallums contend that they were denied due process under the Colorado and United States Constitutions and their rights under the APA because CDOT didn't hold a hearing before it closed the original highway access point. This contention fails for several reasons.

¶ 27    First, the McCallums don't have a cognizable property interest to assert a constitutional due process claim. *See Wilkerson v. State*, 830 P.2d 1121, 1124 (Colo. App. 1992) ("[I]n alleging a deprivation of due process, plaintiff must first demonstrate the existence of the property interest which enables him to assert the constitutional claim and the basis of his entitlement to it."). The McCallums don't own the original access point; they merely have the right to reasonable ingress and egress to and from the highway. *See* § 42-1-102(18), C.R.S. 2024 ("[O]wners or occupants of abutting lands and other persons have no legal right of access to or from the [highway, street, or roadway] except at such points only and in such manner as may be determined by the public authority having

16

jurisdiction over such highway, street, or roadway."); *State Dep't of Highways v. Interstate-Denver W.*, 791 P.2d 1119, 1121 (Colo. 1990) (declining to adopt a per se rule that substantial interference occurs and compensation is required whenever a landowner loses a particular highway access point). And "[a]n easement, regardless of the manner of its creation, does not carry any title to the land over which it is exercised, nor does it serve to dispossess the landowner." *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998).[5] The McCallums have the right to use the easement, but the Deweys own the property over which the easement runs. *See id.* ("The owner of the servient estate enjoys all the rights and benefits of proprietorship consistent with the burden of the easement; while the rights of the owner of the dominant estate are limited to those connected with use of the easement.").

¶ 28     Second, CDOT wasn't required to hold a hearing for the McCallums under section 24-4-104(6), C.R.S. 2024, of the APA.

---

[5] Although this rule is somewhat altered in the case of an exclusive easement (i.e., for the easement holder's sole enjoyment), *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 n.5 (Colo. 1998), it's undisputed that the historical easement is non-exclusive.

The McCallums equate CDOT's decision to "destroy their access" with revoking a license. Accordingly, they contend, CDOT should have complied with section 24-4-104(6), which requires an agency to hold a hearing before revoking a previously issued license. In further support of their argument, they cite *Sanchez v. State*, 730 P.2d 328 (Colo. 1986), in which the supreme court held that if a licensee's conduct would warrant revocation, section 24-4-104's "prohibition against summary revocation of a license in the absence of an initial express finding of deliberate and willful conduct is necessary because the licensee suffers the immediate loss of livelihood without the due process protections of prior notice and formal hearing." *Id.* at 332.

¶ 29     We aren't convinced that CDOT's conduct amounted to revocation of a license. But even if it did, the McCallums aren't the relevant licensees who would have been entitled to a hearing. The APA defines "[l]icense" to include an agency permit. § 24-4-102(7), C.R.S. 2024. The Access Code, in turn, defines "permittee" as "any person, unit of government, public agency or any other entity that owns a fee interest in the property served, to whom an access permit is issued." Dep't of Transp. Reg. 1.5(60), 2 Code Colo. Regs.

18

601-1. CDOT issued the highway access permit to the Deweys, who hold fee simple title to the property for which access to the highway was relocated. The relevant licensees are thus the Deweys; insofar as the relocation interfered with the *McCallums'* use of the original access point and historical easement connected thereto, section 24-4-104(6)'s procedural protections didn't extend to them.

¶ 30    Third, CDOT ultimately afforded the McCallums a meaningful opportunity to be heard. After the McCallums appealed CDOT's decision, the ALJ held a four-day hearing to determine whether CDOT's actions were authorized and reasonable. Eleven witnesses testified, counsel for the McCallums and CDOT introduced more than one hundred exhibits into evidence, and the ALJ heard closing arguments. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").

### III. Attorney Fees

¶ 31    The McCallums request an award of attorney fees.  Because they haven't prevailed in this appeal or otherwise stated a legal basis for an award of attorney fees, we deny their request.  *See* C.A.R. 39.1; *Holt Grp., L.L.C. v. Kellum*, 260 P.3d 50, 56 (Colo. App. 2010).

### IV. Disposition

¶ 32    The judgment is affirmed.

JUDGE BROWN and JUDGE YUN concur.